STATE OF NORTH CAROLINA EX REL UTILITIES COMMISSION v. AT-
    LANTIC COAST LINE RAILROAD COMPANY.

(Filed 12 October, 1966.)

**1. Utilities Commission § 1—**

A public utility has the same freedom as any other corporation in the
management of its properties and its employees except insofar as regula-
tions in the public interest are authorized by common law and by statute.

**2. Same—**

The Utilities Commission has no authority of regulation beyond that
conferred by apposite statutes, liberally construed to effectuate State
policy.

**3. Utilities Commission § 7—**

A carrier by rail may not substantially reduce the number of hours a
day during which an established station should be kept open without first
obtaining authority to do so from the Utilities Commission; nevertheless,
curtailment of service cannot be denied arbitrarily, but only upon findings
supported by competent, material and substantial evidence that the public
convenience and necessity require the continuation of the hours of service
undiminished and that in rendering such service the carrier will not in-
cur costs out of proportion to any benefit to the public.

**4. Same—  Application for consolidation of two stations in question
should have been allowed upon the evidence.**

In this application by a carrier to consolidate two of its freight agencies
by having one agent open each for a part of the working day, the evi-
dence tended to show that the full-time agent at one station on the aver-
age had nothing to do for more than half of the day and the agent at the
other station on the average had substantially less than one shipment per
day. *Held:* The findings and conclusions of the Commission that a full-
time agent is needed at each station to meet the public convenience and
necessity is arbitrary and capricious, since the slight inconvenience to ship-
pers in having to make their shipments during the part of each day the
station was open cannot justify precluding the carrier from effecting sub-
stantial economies which would result from consolidation.

APPEAL by applicant Railroad from *Cowper, J.,* at the 31 Jan-
uary 1966 Civil Session of PENDER.

For many years the Atlantic Coast Line Railroad has maintained
stations at Atkinson and Burgaw, each station being open and at-
tended by an agent eight hours per day, exclusive of Saturdays and
Sundays. It applied to the North Carolina Utilities Commission for
permission to "consolidate" the agencies. The proposed "consolida-
tion" would not result in the abandonment of either station but
would place both under a single agent. It is proposed that this agent
keep the Burgaw station open from 8 a.m. to 12 p.m., then go to
Atkinson, 15 miles away, and keep that station open from 1:30

UTILITIES COMMISSION *v.* R. R.

p.m. until 2:45 p.m., and return to Burgaw, where he would keep the station open from 3:15 p.m. until 5 p.m.

The Commission denied the application. On appeal, the superior court remanded the matter to the Commission for a further hearing, the taking of additional evidence, and, upon consideration of all the evidence, the entry of such order as the Commission might deem proper. After further hearing, the Commission entered its order, setting forth its findings of fact and conclusions of law, and again denied the application. The Railroad again appealed to the superior court, which affirmed the order of the Commission. From the judgment of the superior court, so affirming the order of the Commission, the Railroad has appealed to this Court.

The Commission made the following findings of fact (summarized):

Burgaw, with a population of 1,700, is also the governing agency for Rocky Point and Watha, nine and six miles distant. Atkinson, with a population of 300, is the governing agency for Currie and Ivanhoe, six and four miles distant. Burgaw and Atkinson are 15 miles apart by highway.

During the calendar year of 1963, 71 carload shipments and 104 less-than-carload (LCL) shipments were received at Atkinson, while no carload shipments and only nine LCL shipments moved from Atkinson, making a total for the year of 175 inbound shipments and nine outbound shipments handled at this station, exclusive of Ivanhoe and Currie, for which no data are shown for this year.

For the 12 months ending 31 January 1964 (*i.e.,* beginning and ending one month later than the above period), at Atkinson, including both Currie and Ivanhoe, 137 carload shipments and 133 LCL shipments were received, while six carload shipments and 43 LCL shipments moved out, making a total of 319 shipments of all kinds handled at Atkinson, including Currie and Ivanhoe, during this period of 12 months.

For the 12 months ending 31 March 1965 at Atkinson, including Currie and Ivanhoe, 107 carload shipments and 40 LCL shipments were received, 50 carload shipments and 20 LCL shipments moved out and 20 more LCL shipments were "handled," the latter group not being broken down between inbound and outbound shipments. Thus, for this period, a total of 237 shipments of all kinds were "handled at or through the Atkinson agency."

For the 12 months ending 31 January 1964, a total of 348 carload shipments and 216 LCL shipments were "handled at the Burgaw station," the Commission making no breakdown between inbound and outbound shipments or between Burgaw, Rocky Point and Watha. For the calendar year of 1963, the Burgaw station

"handled 60 carload shipments and 8 LCL shipments through its governed agency of Rocky Point." No other finding with reference to traffic at or through Burgaw was made. The "out-of-pocket" cost of operating the Atkinson station for the 12 months ending 31 January 1964 was $5,984.08, and at Burgaw the "out-of-pocket" cost was $7,047.51. In the same period, the Atlantic Coast Line's share of the gross freight revenues derived from the handling and transportation of all of the above shipments moving to or from Atkinson was $10,282.99. In the same period, the "gross revenue" (not merely the Coast Line's part) for the handling and transportation of all shipments "handled at the Burgaw station" totaled $33,209.60. During this period, the Burgaw station also received "gross revenue" of $534.42 from a total of 418 inbound and outbound passengers, and "miscellaneous revenue" of $539.32.

Upon these "Findings of Fact," the Commission reached the following "Conclusions":

The proposal "for all practical purposes amounts to closing of the station [at Atkinson]."

"* * * Applicant should not be permitted to discontinue or to reduce its services to the public except upon a clear showing of lack of public need or a showing that the service rendered is so costly and expensive to applicant with relation to the revenues and earnings realized that it is economically impossible to continue the full service.

*       *       *

"[T]he public convenience and necessity at the Atkinson station cannot be met and provided by an agent being present at that point only 1 hour and 15 minutes per day. * * * [T]he services of a full time agent are needed and required to meet the public convenience and necessity at Burgaw. * * * [A]pplicant's application to consolidate and dualize these two agencies should be denied."

The Commission also stated, under the heading "Conclusions," that for the 12 months ending 31 March 1965, shipments "handled at Atkinson" resulted in revenues "more than double the amount of revenue received at Atkinson for the calendar year of 1963." It also stated, "Clearly both the number of shipments and the revenue have increased at Atkinson continuously since 1963." However, the Commission's findings, above stated, show that for the 12 months ending 31 January 1964 (which would include 11 months of the calendar year 1963), Atkinson, inclusive of Currie and Ivanhoe, had a total of 319 shipments, as compared with only 237 shipments in the 12

months ending 31 March 1965, though in the latter period there were 14 more carload shipments handled than in the earlier period.

Apparently, there is no passenger traffic at Atkinson.

The Railroad excepted to each of the foregoing conclusions and statements under the heading "Conclusions" on the ground that it is "arbitrary and capricious," being "unsupported by competent, material and substantial evidence" or by any finding of fact which is supported by such evidence. Each such exception was overruled by the superior court and to each such ruling by the court the Railroad excepted, assigning it as error.

*Maupin, Taylor & Ellis by Frank W. Bullock, Jr. and Albert B. Russ, Jr., for Atlantic Coast Line Railroad Co.*

*Edward B. Hipp for North Carolina Utilities Commission.*

*Vaughan S. Winborne for Transportation-Communication Employees Union, appellee.*

LAKE, J. A railroad or other public utility corporation is engaged in the operation of a privately owned business. By virtue of the nature of the services it undertakes to render, certain exceptional duties are imposed upon it by the common law and by statute, and the Utilities Commission is authorized by statute to regulate its activities. In other respects, the company has the same freedom as does any other corporation in the management of its properties and in the employment and assignment of the duties of its employees.

The Utilities Commission has no authority to regulate, or impose duties upon, a railroad company except insofar as that authority has been conferred upon the Commission by Chapter 62 of the General Statutes, liberally construed to effectuate the policy of the State announced therein. With reference to the matters involved in this appeal, that policy is declared as follows in G.S. 62-2:

> "[I]t is hereby declared to be the policy of the State of North Carolina to provide fair regulation of public utilities in the interest of the public, * * * to promote adequate, economical and efficient utility services * * * and *to these ends,* to vest authority in the Utilities Commission to regulate public utilities generally and their rates, services and operations, in the manner and in accordance with the policies set forth in this chapter." (Emphasis added.)

G.S. 62-131(b) provides, "Every public utility shall furnish adequate, efficient and reasonable service." The term "public utility" includes a railroad corporation. G.S. 62-3(23a).

G.S. 62-32(b) provides:

"The Commission is hereby vested with all power necessary to require and compel any public utility to provide and furnish to the citizens of this State reasonable service of the kind it undertakes to furnish * * *"

G.S. 62-118 provides:

"Upon finding that public convenience and necessity are no longer served, *or* that there is no reasonable probability of a public utility realizing sufficient revenue from a service to meet its expenses, the Commission shall have power, after petition, notice and hearing, to authorize by order any public utility to abandon or reduce such service. * * *" (Emphasis added.)

G.S. 62-247 provides:

"(a) The Commission is empowered and directed to require, where the public necessity demands, *and* it is demonstrated that the revenue received will be sufficient to justify it, the establishment of stations or terminals by any railroad company * * * (Emphasis added.)

"(c) A railroad company which has established and maintained for a year or more a passenger station or freight depot * * * shall not abandon such station or depot, nor substantially diminish the accommodation furnished by the stopping of trains, except by consent of the Commission. * * *"

G.S. 62-75 provides that in all proceedings before the Commission, except those instituted by the Commission, itself, the burden of proof shall be upon "the complainant."

G.S. 62-65(a) provides:

"When acting as a court of record, * * * no decision or order of the Commission shall be made or entered * * * unless the same is supported by competent material and substantial evidence upon consideration of the whole record."

G.S. 62-94(b) provides that upon appeal from an order of the Commission, this Court may reverse or modify the decision if the substantive rights of the appellant have been prejudiced because the Commission's findings, inferences, conclusions or decisions are "unsupported by competent, material and substantial evidence in view of the entire record as submitted," or are "arbitrary or capricious."

A liberal construction of these statutory provisions, so as to effectuate the policy of the State as therein declared, compels the conclusion that when a railroad corporation has established and

maintained a freight depot or passenger station pursuant to the order of the Commission, or has established and maintained for a year or more such depot or station on its own initiative, it may not, without first obtaining an order from the Commission authorizing it to do so, substantially reduce the number of hours per day during which such station shall be kept open for the service of the public and attended by an agent of the railroad. However, when the railroad company applies for such an order, the Commission may not withhold its approval unreasonably and arbitrarily. It may deny such permission only after a hearing and only if it finds and concludes, upon competent, material and substantial evidence in view of the entire record, both that the public convenience and necessity requires the station or depot to be so kept open for a greater portion of the day, and that the railroad, by so doing, will not incur costs out of proportion to any benefit to the public. *Corporation Commission v. R. R.*, 139 N.C. 126, 51 S.E. 793; *Utilities Com. v. R. R.*, 233 N.C. 365, 64 S.E. 2d 272; *Utilities Commission v. R. R.*, 254 N.C. 73, 118 S.E. 2d 21.

A railroad may, of course, be required to keep a station open, with an agent in attendance, if the public convenience and necessity requires such service, even though this can be done only at a loss to the railroad, provided such loss is not so great as to be unreasonable in comparison with the public's benefit from the service. *Utilities Com. v. R. R.*, 233 N.C. 365, 64 S.E. 2d 272. Conversely, a railroad may not be denied the right to curtail, or abandon, a service for which there is no substantial public need, even though, upon its entire business, the company is earning a fair rate of return. Though prosperous, a railroad or other utility company may not be denied the right to effect economies in its operation, so as to increase its earnings, unless it may reasonably be found, upon the evidence before the Commission, that the public convenience and necessity requires the continuation of the service in question. An occasional inconvenience to a shipper, which is trivial in comparison with the saving to the railroad from the elimination of the service, will not suffice to show such public convenience and necessity. See *Utilities Com. v. R. R.*, 233 N.C. 365, 64 S.E. 2d 272. Waste of a utility's manpower, or other resources, with no substantial resulting benefit to the public, is not in the public interest and is not required by these statutes.

The Railroad introduced undisputed evidence that, upon a normal day, the full time agent at Burgaw has nothing to do for more than half of the day and is in communication with members of the public not more than 30 minutes throughout the entire day. Its evidence is also undisputed that at Atkinson, on a normal day, the

agent has nothing to do for more than six of the eight hours when he is on duty, and is in communication with the public no more than 19 minutes throughout the entire day. The evidence shows that in order for a shipper or consignee to deliver to or receive from the depot at Atkinson a less-than-carload shipment, he must, as a practical matter, go to the depot while the agent is present. Obviously, it is somewhat more convenient to make such trip to the depot if it is kept open eight hours a day than if it is kept open only for an hour and a quarter. However, the evidence of the Railroad is undisputed, and the Commission found, that in the entire 12 months ending 31 March 1965 only 20 less-than-carload shipments, inbound and outbound combined, were handled at the Atkinson depot.

The protestants offered evidence showing that the Brown Lumber Company finds it desirable, if not necessary, to make out, itself, the bills of lading covering its carload shipments of lumber from Ivanhoe and to carry them in person to the depot at Atkinson for the signature of the agent. Obviously, this can be done only when the agent is at the depot. However, there is no dispute of the Railroad's evidence showing that in this entire 12 months' period the Brown Lumber Company shipped only eight carloads of lumber. The undisputed evidence shows that in these 12 months the total shipments, inbound and outbound, carload and less-than-carload, handled by the Atkinson depot, including those moving to and from Ivanhoe and Currie, numbered only 237, an average of substantially less than one shipment per day, Saturdays and Sundays excluded. There was no evidence whatever of any protest by any shipper or consignee at Burgaw, or that anyone using that depot would be inconvenienced to any degree whatever by extending the lunch hour absence of the agent from that station to cover the proposed hour and 15 minutes at Atkinson.

The Commission's findings and conclusions that a full time agent is needed to meet the public convenience and necessity at Burgaw and that the public convenience and necessity at Atkinson cannot be met and provided under the proposed plan are not supported by the evidence in the record and are, therefore, arbitrary and capricious. The order based thereon is beyond the statutory authority of the Commission.

The judgment of the superior court is, therefore, reversed, and this proceeding is remanded to the superior court for the entry of its judgment reversing the order of the Utilities Commission and remanding the matter to the Commission for the entry of an order in accordance with this opinion.

Reversed and remanded.