**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a corporation, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. 45288.**

Supreme Court of Oklahoma.

Oct. 9, 1973.

Franklin, Harmon & Satterfield, Oklahoma City, Donald E. Engle, St. Louis, Mo., for appellant.

T. Earl Curb, Asst. Gen. Counsel, Oklahoma Corp. Comm., Oklahoma City, for appellee.

BERRY, Justice:

The question presented herein is whether the Corporation Commission erred in denying appellant's application to reduce hours of agency service at its agencies in Antlers, Clayton and Talihina.

Appellant, which presently maintains an agent in each station for 8 hours a day, five days a week, requested modification of hours of agency service under a plan referred to as "tripilization." Under tripilization a single agent will drive between the stations, and will be in Antlers from 8:00 A.M. until 11:00 A.M., in Clayton from 12:30 P.M. until 1:30 P.M., in Talihina from 2:00 P.M. until 3:00 P.M., and in Antlers the remainder of the day. Protests were filed and the matter was assigned to a referee who heard evidence.

The evidence indicated appellant handles only full carload shipments at the agencies, and provides no passenger service to the three cities, but does provide tri-weekly freight train service with a train running one direction on Monday, Wednesday and Friday, and the opposite direction on Tuesday, Thursday and Saturday. The agents' only public function in handling carload shipments is handling of shipping documents.

Appellant's evidence indicated during the period from January 1, 1969, until March 1, 1971, the Antlers office handled 878 cars [an average of 1.55 per working day], the Clayton office handled 501 cars [an average of .88 per working day] and the Talihina office handled 634 cars [an average of 1.1 cars per working day].

Appellant applied system wide time study averages to this volume of business and ascertained the average time per working day needed to handle shipping documents to be 28.74 minutes at Antlers, 16.27 minutes at Clayton, and 20.605 minutes at Talihina.

Appellant's division superintendent testified business at the stations is reasonably uniform throughout the year.

Appellant also introduced evidence concerning revenue and expenses attributable to the stations during the twenty seven month period. Station revenue was computed by attributing to the station 50% of revenue from intraline shipments, and 100% of appellant's share of revenue from interline shipments, originating or terminating at the station. Expenses attributable to each station included out of pocket expenses and assigned system expenses. The assigned system expense was computed by establishing the ratio of system wide operating expenses [less station expenses] to system wide operating revenues, and applying this system expense ratio to revenue attributable to the station.

For the 27 month period revenue of $80,142, out of pocket expenses of $20,441 and assigned system expenses of $69,362 were attributed to Antlers; revenue of $55,825, assigned system expenses of $47,898, and out of pocket expenses of $20,130 were attributed to Clayton; and revenue of $52,679, assigned station expense of $45,540 and out of pocket expenses of $21,123 were attributed to Talihina.

Appellant estimated tripilization would save $18,000 in salaries during the first year, with a net savings of $15,000 after deducting expenses paid to the remaining agent. It estimated savings for subsequent years at approximately $21,000 to $22,000 per year due to the fact union contracts provided a 43% increase in salaries of agents.

Appellant's evidence indicated 22 shippers would be affected by the change. Under the proposed system shippers would not be inconvenienced in ordering empty cars because a toll free telephone number would be provided to all shippers for handling of business at times the agent was not in town. This line would be open 8 hours a day, 5 days a week. Also a number for shippers to call in case of emergency would be posted at each station and published in telephone directories.

A question was raised concerning problems which might arise concerning shipper's order [C.O.D.] cars. However, during the 27 month study period only 56 shipper's order cars were handled in the three cities, 48 being handled in Antlers, 5 in Talihina and 3 in Clayton. No protests were received from Antlers.

Clayton is located between Antlers and Talihina, being 34.9 rail miles from Antlers, and 23.1 rail miles from Talihina, and the total round trip driving distance would be approximately 116 miles.

Mr. Herman Coussens from Talihina was the only shipper who testified in opposition to the application. He criticized existing train service and stated that it would be difficult to obtain damage inspections under the proposed system. He testified agents should spend time improving service and informing customers of delays in shipments. Appellant's records indicated he received 82 cars during the 27 month study period.

Seven letters of protest were received. However, two were from Mr. Coussens, one was from the Clayton Bank and one was from Mr. Amend, a non-shipper businessman from Clayton who made a statement at the hearing. The other three were from shippers, Dell Terry of Reese Tie Company, Mr. Masters and Mr. Ivey. However, Mr. Ivey withdrew his protest and a letter from Mr. Reese, president of Reese Tie Company, which was introduced at the hearing, indicated he did not oppose the plan.

In addition various businessmen and political leaders representing Clayton and Talihina made statements to the effect the agencies should be open 8 hours a day and

future increases in railroad shipments could be expected.

In his findings the referee stated the agent would have difficulty in providing service to all three towns during periods of hazardous weather due to driving distance involved and the fact the highways have many curves. He also stated the main reason for the application was a 43% increase in agents salaries and tripilization would lead to a total breakdown in communication between appellant and its customers and tend to discourage railroad traffic. He then found that convenience and necessity require a station agent be stationed at each of the towns. The Commission approved the referee's findings and denied appellant's application.

On appeal appellant contends the Commission's order is arbitrary and unreasonable.

In support of this contention appellant cites St. Louis-San Francisco Ry. Co. v. State, Okl., 271 P.2d 338, wherein we stated:

"The only possible legal way to require a railroad to maintain an agency is to show either that it is profitable or that there are peculiar circumstances in the case showing that the public convenience and necessity is such that it would require them to operate there in any event."

It then argues when assigned station expense is considered each of the three stations is operating at a loss and since only twenty-two shippers, with an average volume of under 2 cars per day at each station, are involved, there can be no genuine public inconvenience in reducing hours of service.

The Commission contends (1) public necessity requires more station agency service than proposed and in cases involving public necessity, as contrasted to public inconvenience, insufficient revenue has no bearing, and (2) even if public convenience, rather than public necessity, is involved, the fully distributed cost method for determining loss should not be used in cases involving branch line stations.

We must affirm the order appealed from if it is supported by substantial evidence and the law. St. Louis-San Francisco Ry. Co. v. State, Okl., 319 P.2d 592; Kingwood Oil Co. v. Corporation Commission, Okl., 396 P.2d 1008.

In light of appellant's uncontradicted evidence concerning time spent by agents handling shipping documents we conclude there is no actual public necessity for a full-time station agent at any of the stations and the public need can be adequately served by one agent in the manner proposed by appellant.

Furthermore, we have held that maintenance of a particular type of agency service is not an absolute duty but involves a question of business policy. Atchison, Topeka and Santa Fe Railway Co. v. State, 189 Okl. 485, 118 P.2d 202.

Certainly the shippers in the three towns may be inconvenienced by the proposed system because an agent will be on duty only part time at each station instead of full time each day. In these circumstances it was the duty of the Commission to determine whether the proffered service was reasonable and adequate, and, if it was, the proffered service was sufficient. Kurn v. State, 175 Okl. 379, 52 P.2d 841. The requirement of more would not be an act of regulation but the substitution of the Commission for the governing officials of the carrier and their judgment as to policy and operation in place of the officials of the corporation. Kurn v. State, supra. In paragraph 4 of the syllabus of Kurn v. State, supra, we held:

"The term 'adequate or reasonable facilities' is not in its nature capable of exact definition. It is a relative expression, and has to be considered as calling for such facilities as might be fairly demanded; regard being had, among other things, to the size of the place, the extent of the demand for transportation, the cost of furnishing the additional ac-

commodation asked for, and to all other facts which would have a bearing upon the question of convenience and cost."

In State of North Carolina ex rel. Utilities Commission v. Atlantic Coast Line Railroad Company, 268 N.C. 242, 150 S.E. 2d 386, the court reversed the Commission's order denying railroad's application to dualize two stations. There the court stated:

"* * * Waste of utility's manpower, or other resources, with no substantial resulting benefit to the public, is not in the public interest and is not required by these statutes."

In Application of Chicago, B. & Q. R. R. Co., 179 Neb. 489, 138 N.W.2d 711, the court stated:

"The time necessary to devote to the performance of duties by station agents is certainly a matter of importance in determining whether or not the Nebraska State Railway Commission acted arbitrarily and unreasonably. * * *

"* * * The evidence shows without any substantial conflict that there is no actual public need for a full-time station agent at either point, and that the public need can be adequately served by one agent in the manner outlined by the carrier. Under such circumstances, the denial of an application to dualize the two agencies is not sustained by the evidence and is unreasonable and arbitrary."

■ Therefore we conclude the time required for agents to perform their public duties is one very important factor to be considered in determining whether proffered services are adequate and reasonable.

In their briefs the parties devote considerable discussion to whether the agencies are being operated at a loss and the appropriate accounting procedure to be used in determining this issue. The revenue at each station exceeds out of pocket expenses. However, under the railroad accounting procedure a portion of system wide operating expense is assigned to each of the stations, and if these expenses, are considered each of the stations is being operated at a loss.

■ In numerous cases we have held facilities required to be furnished at any station should be in a measure commensurate with patronage and receipts from that portion of the public to whom the service is rendered and it is not reasonable to require maintenance of a full-time agency station when cost of the service is out of proportion to revenue derived from that portion of the public benefited thereby, especially where a substitute service may be provided which will afford the same essential service but is less convenient. Kurn v. State, supra; A. T. & S. F. Ry. Co. v. State, supra; Lowden v. State, 186 Okl. 654, 100 P.2d 890.

■ In determining whether the cost of a service which is not an absolute duty is out of proportion to revenue derived from the public benefited thereby we have not limited ourselves to a consideration of whether out of pocket costs exceed revenue. In Kurn v. State, supra, we reversed an order of the Commission denying an application to curtail agency service even though revenue exceeded out of pocket costs. Furthermore, in Chicago, R. I. & P. Ry. Co. v. State, 24 Okl. 370, 103 P. 617, we considered the reasonableness of a Commission order requiring installation of telegraph service at a railway station and stated:

"* * * where the receipts at such stations will not justify the installing of such service, there being eliminated the question of the safety or expedition in the operation of trains, it would be unreasonable to require such service to be installed creating a deficit at such station to be borne by the receipts at a larger station, except in exceptional instances. * * * If the freight receipts at such office are sufficiently large to pay for the maintenance of the station and its agent, and contribute a *reasonable pro rata towards the maintenance and operation of the line,* and in addition

thereto to pay the additional expense, either solely or in connection with the passenger receipts, *to install and maintain a telegraph office for the convenience of the patrons of said station, when reasonably necessary, it would be reasonable and just, otherwise not."* [emphasis added]

The Commission apparently concedes that some system wide expenses should be considered but contends appellant's accounting procedure for allocating system wide expenses to particular stations should not be applied to small branch line stations.

■ The Commission does not suggest an alternative accounting procedure to be used in allocating system wide expenses to branch line stations. The accounting procedure used by appellant herein has been specifically approved by courts in other jurisdictions in cases involving dualization of agencies. Application of Chicago, B. & O. R. R. Co., 138 N.W.2d 818. All cases cited by the Commission to support its position involved rates and discontinuance of rail service. Certainly different factors are involved in those situations.

Insofar as concerns the argument that only branch line stations located in areas of heavy traffic will qualify for full station agency service if this system of accounting is used, we note that the time spent by the agent in performing his public duties is also a factor to be considered.

■ Therefore, in light of the undisputed evidence that essentially the only public function performed by agents is handling of shipping documents for carload shipments, that the average time per working day spent by each agent handling shipping documents is less than 30 minutes, that none of the three agencies is profitable when consideration is given to system wide operating expenses, and that under the proposed plan appellant will save $15,000 to $20,000 per year in direct expenses while still offering the same essential service to shippers, we conclude the Commission's order denying applicant's request was arbitrary and unreasonable.

■ If the proposed plan proves inadequate due to increases in volume of railroad freight business, insufficiency of driving time between stations, or other factors, the Commission may reconsider the reasonableness and adequacy of the service provided by appellant. Chicago R. I. & P. Ry. Co. v. State, 117 Okl. 175, 245 P. 656.

Reversed.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, LAVENDER, SIMMS, and DOOLIN, JJ., concur.

HODGES and BARNES, JJ., dissent.

HODGES, Justice (dissenting).

The majority opinion in reversing the order of the Corporation Commission adopts the applicant's request for a modification of hours of agency service under a plan referred to as "tripilization". In my opinion a more equitable result would be a plan of "doublization" whereby a single agent would maintain an agency in Antlers and a single agent would maintain an agency for the cities of Talihina and Clayton. While I agree the order of the Corporation Commission should be reversed, I would remand the cause to the Corporation Commission for further hearings with directions to consider other alternatives including the suggestion above mentioned.

I respectfully dissent.

I am authorized to state that BARNES, J., concurs in the views hereinabove expressed.