STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, NORTH STATE TELEPHONE COMPANY, DEFENDANT, BARNARDSVILLE TELEPHONE COMPANY, CAROLINA TELEPHONE & TELEGRAPH COMPANY, CENTRAL TELEPHONE COMPANY, CHAPEL HILL TELEPHONE COMPANY, CITIZENS TELEPHONE COMPANY, CONCORD TELEPHONE COMPANY, EASTERN ROWAN TELEPHONE COMPANY, ELLERBE TELEPHONE COMPANY, GENERAL TELEPHONE COMPANY OF THE SOUTHEAST, HEINS TELEPHONE COMPANY, LEXINGTON TELEPHONE COMPANY, MEBANE HOME TELEPHONE COMPANY, MID-CAROLINA TELEPHONE COMPANY, MOORESVILLE TELEPHONE COMPANY, NORFOLK & CAROLINA TELEPHONE COMPANY, NORTH CAROLINA TELEPHONE COMPANY, RANDOLPH TELEPHONE COMPANY, SALUDA MOUNTAIN TELEPHONE COMPANY, SANDHILL TELEPHONE COMPANY, SERVICE TELEPHONE COMPANY, SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY, THERMAL BELT TELEPHONE COMPANY, UNITED TELEPHONE COMPANY OF THE CAROLINAS, INC., WESTCO TELEPHONE COMPANY, AND WESTERN CAROLINA TELEPHONE COMPANY, RESPONDENTS v. NATIONAL MERCHANDISING CORPORATION, COMPLAINANT

No. 51

(Filed 17 December 1975)

1. Utilities Commission § 2— manufacturer of plastic telephone directory covers — no regulation by Utilities Commission
    Since complainant, a manufacturer and distributor of plastic covers designed to fit over the outside cover of a telephone directory, is not a public utility, its production in another state and distribution in N. C. of its plastic covers are not subject to regulation by the Utilities Commission. G.S. 62-3(23); G.S. 62-2; G.S. 62-30; G.S. 62-31.

2. Utilities Commission §§ 6, 9— manufacturer of plastic telephone directory covers — interest in tariff and rule — standing to file complaint and appeal
    Complainant manufacturer and distributor of plastic telephone directory covers had the requisite interest in a telephone company

tariff declaring telephone directories to be the property of the telephone company and forbidding any person to attach to the directory any cover not furnished by the telephone company upon the pain of having such person's telephone service suspended and had the requisite interest in the rule requiring such tariff promulgated by the Utilities Commission; therefore, complainant had standing to file the complaint which initiated the proceeding and had standing to prosecute the appeal. G.S. 62-73; G.S. 62-92; G.S. 62-96.

3. **Utilities Commission § 1— commission as administrative agency — regulatory authority conferred by statute**

The Utilities Commission, being an administrative agency created by statute, has no regulatory authority except such as is conferred upon it by Ch. 62 of the General Statutes, and, obviously, the Commission may not, by its order, require or authorize a rule or practice by a public utility company which is forbidden by statute, or authorize such company to refuse to perform a duty imposed upon it by statute, unless Ch. 62 of the General Statutes has conferred such authority upon the Commission.

4. **Telephone and Telegraph Companies § 1; Utilities Commission § 2— telephone service — discontinuance without justification — authority of Utilities Commission**

G.S. 62-140 requires a telephone company serving in this State to render telephone service, without discrimination, to all within its service area who apply therefor, and a refusal by the company to serve without a reasonable justification therefor is a violation of the company's duty and the Commission has no authority to permit it.

5. **Telephone and Telegraph Companies § 1; Utilities Commission § 6— order prohibiting attachment of additional covers to telephone directories — suspension of service as penalty — unreasonableness of order**

It is unreasonable for a telephone company to discontinue service to a subscriber for the sole reason that such subscriber elects to place an opaque cover upon the directory supplied to him by the company, and such discontinuance cannot be justified on the grounds that (1) the subscriber will forget the name of his telephone company, the towns listed in the directory or other information printed on the directory cover once he places an opaque cover on his directory, (2) the printing on the added cover of telephone numbers of the advertising customers of the producer of the cover is an infringement of the telephone company's copyright of its directory, (3) attachment of the added cover to the directory poses a serious threat to the quality of the telephone company's service in that the printed list of "emergency numbers" on the added cover may include an occasional "wrong number," (4) title to the directory is reserved by the telephone company and the attachment of the added cover to the book is a trespass on the company's property, and (5) the covers carry advertisements of local businesses and therefore compete with the telephone company's yellow page advertising.

Justice BRANCH did not participate in the consideration or decision of this matter.

APPEAL by the complainant from the decision of the Court of Appeals, reported in 26 N.C. App. 617, 220 S.E. 2d 97, affirming the order of the North Carolina Utilities Commission, *Britt, J.,* dissenting.

North States Telephone Company is a public utility corporation rendering telephone service, its principal office being in the City of High Point. Its General Exchange Tariff, previously approved by the Commission provided:

> "Directories which are the property of the Telephone Company are furnished to subscribers as part of the telephone service. Binders, covers, folders, tags, stickers or other devices not furnished by the Telephone Company are prohibited and any persons [sic], firm or corporation who violates this rule, or permits it to be violated, is made subject to the penalty of having the telephone service suspended."

National Merchandising Corporation, hereinafter called the complainant, is a manufacturer and distributor of plastic covers designed to fit over the outside cover of a telephone directory. The inside flaps of these covers, which hold them in place on the directory, are of clear plastic so that they do not obscure any printing upon the interior of the cover sheet of the directory itself. The remainder of the complainant's cover is opaque so that, with the cover in place upon the directory, nothing printed upon the outside of the cover sheet of the directory itself can be read.

On the front of the complainant's cover advertisements are printed by the complainant, advertising and giving the telephone numbers of from six to sixteen local business establishments, of which no two are in the same business category. The complainant solicits such advertising from business establishments within an area to which the telephone directory relates. Usually, such area is not as extensive as that covered by the telephone directory. The complainant may subdivide even the area served by a single telephone exchange into two or more areas, for each of which it prepares its plastic cover carrying advertisements of business establishments within such smaller territory. The complainant charges the advertisers for its service. It distributes its cover to telephone subscribers within the area to which the advertisements relate, making no charge to the telephone subscriber, informing the subscriber that the cover is a gift

Utilities Comm. v. Merchandising Corp.

from the business establishments so advertising. The telephone subscriber then places the plastic cover on his telephone directory, throws it away or makes such other use as the subscriber sees fit.

On the outside of the back of the plastic cover, the complainant prints numerous telephone numbers which the subscriber may wish to call in the event of an emergency and the telephone numbers of various public institutions or offices, such as the Police Department, the Fire Department, schools, churches, ambulance service, hospitals and the like.

On the outside of the cover sheets of the telephone directory, itself, the Telephone Company has caused to be printed such matters as the name of the company, the exchanges to which the directory relates (a single directory often relating to more than one city or town), the area code number, references to interior pages on which instructions are given for such matters as direct distance dialing and reaching telephone repair service. The outside front cover of the telephone directory may also carry what the company deems an attractive picture, or other decoration, designed to promote good will for the company among its subscribers. Advertising for others than the Telephone Company itself does not appear on the outside pages of the telephone directory but is confined to the yellow page section thereof. Such advertising is not limited to one business establishment in each category but is available to all who desire it. A charge therefor is made to the advertiser. The proceeds of yellow page advertising, in most instances, are sufficient to pay the cost of preparing and distributing the telephone directory and often yield, in addition, a substantial profit to the Telephone Company. Such revenue is regarded as "operating revenue" for the purpose of telephone rate making.

The complainant instituted this proceeding by filing its complaint with the Utilities Commission, alleging that the above quoted provision of the Telephone Company's tariff is an unwarranted interference with the telephone subscriber's right to use his telephone and the directory furnished to him by the Telephone Company. It prayed that this provision be stricken from the tariff.

The company, in its answer, alleged that the telephone directories distributed by it to its telephone subscribers remain the property of the Telephone Company; the tariff provision

in question prohibits an interference with and an impairment of the company's services to its subscribers and the use of such covers on the directories would cause the Telephone Company to lose advertising revenues which loss would result in higher rates to its subscribers for telephone service.

The Commission ordered the matter expanded into a general investigation of tariff restrictions on such directory covers, made all telephone companies operating in North Carolina parties to the proceeding and conducted a hearing, at which all or substantially all of such telephone companies appeared and presented evidence.

The evidence introduced by the several telephone companies was substantially the same and was designed to show the following:

The telephone directories, after distribution by the telephone companies to their respective subscribers, remain the property of the Telephone Company although, when superseded by a later directory, the company does not make any effort to reclaim the old one. Errors sometimes appear in the emergency telephone numbers shown on such plastic covers due to a variety of reasons such as a change of the number following the distribution of the plastic cover, mistake as to the Police Office or Fire Station serving the area and human error in compilation. Covering the information shown on the outside of the front cover page of the directory itself deprives the company of the benefit of its own advertising and ornamentation and deprives the subscriber of direction to the page of the directory on which instructions, useful in obtaining certain telephone services, are set forth. This causes the subscriber to make unnecessary calls to the operator for assistance, which increases operating expense. The Telephone Company's revenues from yellow page advertising are substantial and potential advertisers in the yellow pages are discouraged from placing advertising therein by the preferential position occupied by a competitor whose advertisement appears on the plastic cover. This increases the likelihood of higher rates for telephone service. It also is discriminatory as between such competing businesses. The Telephone Company has copyrighted its directory and has not given the complainant permission to copy any portion of it.

The Commission entered its order (1) dismissing the complaint and denying the relief sought by the complainant, (2) hold-

ing the existing tariff provisions of all the telephone companies relating to the use of directory covers are just and reasonable but should be superseded by a uniform provision, (3) declaring that directories remain the property of the issuing telephone company until superseded by a later issue, (4) requiring all non-telephone utility advertising to be confined to the yellow pages of the directory, and (5) promulgating and making applicable to all telephone companies operating in this State the following rule:

"Directories which are the property of the telephone utility are furnished to subscribers as part of the telephone service. No binder, holder, insert, or auxiliary cover or attachment of any kind not furnished by the telephone utility shall be attached to the telephone directories owned by the utility except that this prohibition shall not apply to a subscriber-provided binder, holder, insert, or auxiliary cover which is attached so that it does not obstruct vital and essential information such as the identity of the exchanges covered by the directory, the effective date of the directory, emergency numbers and federal and state laws and Rules and Regulations of the Commission pertaining to telecommunication services, and any person, firm or corporation violating this rule, or permits [sic] it to be violated is made subject to having telephone service suspended."

The complainant appealed to the Court of Appeals which affirmed the order of the Commission without discussion of the merits, Britt, J., dissenting.

*Smith, Moore, Smith, Schell & Hunter by Bynum M. Hunter and Benjamin F. Davis, Jr. for Complainant Appellant.*

*Edward B. Hipp, Commission Attorney, Maurice W. Horne, Deputy Commission Attorney, and John R. Molm, Associate Commission Attorney, for North Carolina Utilities Commission.*

*Jerry W. Amos; Brooks, Pierce, McLendon, Humphrey and Leonard by James T. Williams, Jr. for North State Telephone Company, The Concord Telephone Company and Lexington Telephone Company.*

*William C. Fleming for General Telephone Company of the Southeast.*

*Taylor, Brinson & Aycock by William W. Aycock, Jr. for Carolina Telephone and Telegraph Company.*

*Kimzey, Mackie & Smith by James M. Kimsey for United Telephone Company of the Carolinas, Inc.*

*A. Terry Wood for Central Telephone Company.*

LAKE, Justice.

[1] The complainant is not a public utility. G.S. 62-3 (23). Consequently, its production in another state and distribution in North Carolina of plastic covers for telephone directories, even if not immune to State regulation by reason of the Commerce Clause of the Constitution of the United States, a question not now before us and which we do not decide, are not subject to regulation by the Utilities Commission. G.S. 62-2; G.S. 62-30; G.S. 62-31.

The order of the Commission from which the complainant appeals does not purport to require anything of the complainant or to prohibit or regulate any of the complainant's activities. The order leaves the complainant free to manufacture and distribute plastic covers for telephone directories and to print thereon advertising matter. What the order does is to require each telephone company operating in this State to file with the Commission a tariff declaring telephone directories, furnished to subscribers, to be the property of the telephone company and forbidding any person (i.e., the telephone subscriber) to attach to the directory any cover not furnished by the telephone company, with an exception not germane to this appeal, upon the pain of having such person's telephone service suspended. Thus, the order of the Commission is, ostensibly, directed against the telephone subscriber who has purchased, or otherwise acquired, from a source other than the telephone company itself, a cover for the telephone directory supplied to him by the telephone company. The order forbids the telephone subscriber to place this cover upon such directory even though the subscriber, after examining it, concludes that it is more attractive in appearance, or contains information more beneficial to him in his use of the telephone, than is or does the original cover of the directory. Such subscriber may retain such cover on his desk, table or telephone stand and use it as he sees fit so long as he does not attach it to the directory. If he does the latter, the telephone company is authorized, though not required, to discontinue telephone service to him.

The tariff of North State Telephone Company, against which the complaint of the complainant was directed, and which was previously in effect with the approval of the Commission, was to the same effect.

[2] Although the tariffs in question leave the complainant free to manufacture and distribute its covers, their effect is, necessarily, to discourage telephone subscribers from placing such covers on the directories in their homes, offices and places of business. Thus, the tariffs discourage prospective advertisers from contracting with the complainant for the placing of their advertisements on the covers and, therefore, substantially handicap the complainant in carrying on its business. G.S. 62-73 provides that a complaint may be filed with the Utilities Commission "by any person having an interest * * * in the subject matter of such complaint," alleging that any "rule, regulation or practice is unjust and unreasonable." We think it clear that the complainant had and has the requisite interest in the original tariff of the company and in the rule so promulgated by the Commission and, therefore, had standing to file the complaint which initiated this proceeding. Consequently, the complainant has standing to prosecute this appeal. G.S. 62-92; G.S. 62-96.

Upon this appeal we may reverse the decision of the Commission and declare the said rule so promulgated by it to be null and void if the order of the Commission is in excess of its statutory authority or jurisdiction or is arbitrary or capricious. G.S. 62-94; *Utilities Commission v. Telephone Co.*, 281 N.C. 318, 336, 189 S.E. 2d 705; *Utilities Commission v. Morgan, Attorney General*, 277 N.C. 255, 267, 177 S.E. 2d 405.

[3] The Utilities Commission, being an administrative agency created by statute, has no regulatory authority except such as is conferred upon it by Ch. 62 of the General Statutes. *Utilities Commission v. R. R.*, 268 N.C. 242, 245, 150 S.E. 2d 386. Obviously, the Commission may not, by its order, require or authorize a rule or practice by a public utility company which is forbidden by statute, or authorize such company to refuse to perform a duty imposed upon it by statute, unless Ch. 62 of the General Statutes has conferred such authority upon the Commission.

The order of the Commission now before us purports to authorize a telephone company to discontinue telephone service

to a subscriber who pays his telephone bills promptly and complies with every rule of the company except that he places upon the directory, furnished him by the company, a cover which, while in place, prevents him from looking at a picture, which the telephone company considers attractive, and prevents him from reading the name of the company, the names of the towns, telephone directories for which are included in the book, a suggestion that the subscriber consult the yellow pages and such other information about its service as the company may see fit to put on the original cover of the directory.

[4, 5]   G.S. 62-140 requires a telephone company serving in this State to render telephone service, without discrimination, to all within its service area who apply therefor. *Dale v. Morganton,* 270 N.C. 567, 155 S.E. 2d 136; *Public Service Co. v. Power Co.,* 179 N.C. 18, 30, 101 S.E. 593, rehear. dism., 179 N.C. 330, 102 S.E. 625. A refusal by the company to serve without a reasonable justification therefor is a violation of the company's duty and the Commission has no authority to permit it. We are, therefore, brought to this question: Is it reasonable for a telephone company to discontinue service to a subscriber for the sole reason that such subscriber elects to place an opaque cover upon the directory supplied to him by the company? We conclude that it is not.

No one requires the subscriber to place such cover on the directory. He does so solely because he, after observing all that appears on the original cover of the directory and what appears on the added cover, concludes that the appearance of the added cover is more attractive or the information contained thereon is more useful to him than that which appears on the original cover.

It is completely unrealistic to say that, having placed the added cover on the directory, the subscriber will no longer remember the name of his telephone company or the towns, telephone subscribers in which are listed in the directory, or that the directory contains a yellow page section. The fact that the book is actually composed of several directories, each relating to a separate town, does not mean necessarily that subscribers in such other towns may be called toll free. A subscriber having frequent occasion to call a person or persons in another town will remember that the directory for such other town is included within his book whether or not the original front page of the book is obscured by an added cover. If he does not, such

information is readily obtained by him through the simple process of flipping quickly through the pages of the book.

It is equally unrealistic to attempt to justify such discontinuance of telephone service on the ground that the printing on the added cover of telephone numbers of the advertising customers of the producer of the cover is an infringement of the telephone company's copyright of its directory. It is entirely possible and probable that the producer of the cover obtained his information as to the telephone number of his advertising customer from such customer, not from reading the directory. In any event, nothing in the record before us indicates that this was not the source of the complainant's information. Furthermore, the order in question does not prohibit the producer of the cover from printing thereon such telephone numbers or from distributing such cover to telephone subscribers, even if it be assumed that the Utilities Commission has jurisdiction to deal with a violation of the copyright law. What the order in question does is to declare that the telephone company may discontinue service to its subscriber solely because the subscriber sees fit to place a cover on the directory supplied to him for use in his home or place of business. We are cited to no authority holding this a violation of the copyright law.

We find no reasonable basis in the evidence contained in the record for the Commission's finding that the attachment of the added cover to the directory poses a serious threat to the quality of the telephone company's service. The mere assertion by officials of the various telephone companies testifying at the hearing that such threat to the quality of the service results from the attachment of the added cover is not evidence sufficient to support such a finding. The evidence is that the printed list of "emergency numbers" and numbers for public institutions such as schools and churches, may include an occasional "wrong number" by reason of human error by the producer of the cover or a subsequent change in the number originally shown correctly. Obviously, there is no greater likelihood of such "wrong number" upon the added cover than there is in a list of such numbers compiled by the telephone subscriber himself and written by him in a space provided therefor by the telephone company on the back page of the original cover of the directory. In any event, the possibility of occasional use of a "wrong number" is not a reasonable ground for discontinuance of the subscriber's telephone service.

Another contention of the telephone companies in support of the Commission's order is that, as the order declares, title to the directory is reserved by the telephone company when it delivers the directory to the subscriber's residence or place of business for the subscriber's use in placing telephone calls and, therefore, the attachment of the added cover to the book is a trespass on the company's property. It is a matter of common knowledge that, except under most unusual circumstances, a telephone directory so delivered to a subscriber remains in the subscriber's possession until it is replaced by a later directory and is then discarded by the subscriber into the trash can or contributed by him to a scrap paper collection. If however, it be technically a trespass upon the telephone company's property to attach an opaque cover to its directory, so delivered to its subscriber, Ch. 62 of the General Statutes does not confer upon the Utilities Commission jurisdiction to prevent or redress such trespass. If the attachment of the cover be a trespass, it is the subscriber, not the producer of the cover, who is the trespasser and it is the subscriber whose telephone service is authorized to be discontinued by this order of the Commission. A trespass so technical in nature and trivial in consequence is not a reasonable ground for discontinuance of the subscriber's service by the telephone company.

Notwithstanding the disclaimer by the Commission, the record makes it abundantly clear that the real reason for the objections of the telephone companies to the use of the complainant's covers by the telephone subscribers is that such covers carry advertisements of local businesses and, therefore, compete with the telephone company's yellow page advertising. This State has adopted the policy of granting to a telephone company a monopoly upon the rendering of telephone service within its service area. G.S. 62-110. Nothing in Ch. 62 of the General Statutes, however, confers upon a telephone company a monopoly upon advertising by its business subscribers. The order of the Utilities Commission attempts to do this by forbidding subscribers to the telephone company's service to attach a cover to the directory supplied by the company to such subscriber. In so doing, the Commission has acted in excess of its statutory authority and has acted arbitrarily and capriciously.

The separate briefs filed by the complainant, the Commission, and each of the telephone companies who are parties to this appeal, and our own research have brought to our atten-

tion only two decisions by courts of last resort upon the question presented by this appeal. Both involve the present complainant and both decisions were in its favor. *New England Tel. & Tel. Co. v. National Merchandising Corp.*, 335 Mass. 658, 141 N.E. 2d 702, 18 PUR 3d 343; *National Merchandising Corp. v. Public Service Commission*, 5 N.Y. 2d 485, 158 N.E. 2d 714, 29 PUR 3d 343. See also: *Hush-A-Phone Corp. v. United States*, 238 F. 2d 266.

Decisions by the intermediate appellate courts of Illinois and Missouri are to the contrary. *Illinois Bell Telephone Co. v. Miner*, 11 Ill. App. 2d 44, 136 N.E. 2d 1; *National Telephone Directory Co. v. Dawson Mfg. Co.*, 214 Mo. App. 683, 263 S.W. 483. Also to the contrary is a decision by Chief District Judge Craven in *Citizens Telephone Co. v. Tel. Service Co.*, 214 F. Supp. 627 (W.D.N.C.). In that case, Judge Craven had before him a suit for an injunction and monetary damages brought against a producer of directory covers, the case being in the Federal court by reason of diversity of citizenship. As Judge Craven pointed out in his decision, he was called upon to apply the law of North Carolina and there was no decision of this Court upon the question. He granted the injunction in reliance upon *Illinois Bell Telephone Co. v. Miner, supra.* His decision is, of course, not binding upon this Court and we do not find its reasoning persuasive. Furthermore, Judge Craven did not have before him the question of the right of the telephone company to cut off a subscriber's telephone service because of the subscriber's use of such a cover upon the directory supplied to him by the telephone company.

In *New England Tel. & Tel. Co. v. National Merchandising Co., supra,* the Massachusetts Court said:

"The evidence does not justify a finding that interference with the company's service to the public will be caused by the use of the covers. The directory is not connected with the telephone company's mechanical and electrical system. * * *

"The evidence, closest to having relevance on this issue, is proof of three errors only (each on a separate cover among the numerous covers distributed by National) in numbers listed on National's covers, one caused by a telephone number change after the cover was published, one caused by clerical error, and one based on a mistake in

transcription. These errors appear to have been corrected with promptness and energy, and there is no evidence that they caused any difficulty. It was conceded that inevitably there are errors in the telephone company's directories also. Any interference with service from this type of error is too trivial to warrant injunctive relief.

"It is suggested that important service instructions are concealed by the cover. Once read, such instructions rapidly become understood and of no importance. There is no basis in the evidence for concluding that any noticeable interference with service occurs from concealing these instructions, even by an opaque cover.

"It is unimportant that the telephone company retains title to the telephone directories, if it does. The subscriber is certainly given by the telephone company a license to use the directories on his own premises. He has sole possession of a directory while he remains a subscriber. * * *

"Apart from the company's tariffs, no contract between the subscribers and the telephone company not to use covers on telephone directories has been proved. * * * We think the provisions of the tariffs, already quoted, do not create such a contract. * * * We adopt this construction the more readily because it avoids * * * serious questions of the validity of the tariff as reasonable under applicable statutes * * * and conceivably also on constitutional grounds. Questions of reasonableness might well be presented by a tariff requirement that subscribers agree (as a condition of obtaining an essential monopolistic, regulated public service which the telephone company is bound to furnish to the public) that they will not attach National's covers or similar covers to the directories. Such a requirement could be designed only to further a private advertising interest of the telephone company. * * *

"Although the telephone company has a protected and necessary monopoly in furnishing telephone service, that does not mean that it can prevent the use by its subscribers of accessories with its equipment and books 'in ways which are privately beneficial without being publicly detrimental.' "

The Masschusetts Court, accordingly, found the reasoning of the Illinois Court of Appeals and of the Missouri Court of

Appeals in the *Illinois Bell Telephone Co. v. Miner, supra,* and *National Telephone Directory Co. v. Dawson Mfg. Co., supra,* not persuasive and held there was no error in the denial of an injunction sought to prevent the producer from distributing such covers. It would seem necessarily to follow that the subscriber's use of such a cover by attaching it to the directory is not justification for a cutting off of his telephone service.

In *National Merchandising Corp. v. Public Service Commission of New York, supra,* the New York Court of Appeals had before it for consideration the Public Service Commission's approval of a standard tariff provision similar to that which has been approved by the Utilities Commission in the present matter. The Court said:

> "The tariff, as approved by the commission, ostensibly governs the contractual relations of the telephone company and its subscribers, but its admitted purpose is to inhibit the activities of National and other firms engaged in similar enterprises. * * *

> "The repository of the commission's regulatory authority is the Public Service Law, and the commission is powerless to exceed the authority conferred on it by that statute. * * * The commission may not posit its jurisdiction upon the possible impact of these covers on advertising revenues. It is one thing to have limited jurisdiction over advertisements in the directory to see that all advertisers are treated equitably, and to insure that maximum revenues are derived from the sale of advertisements * * *; it is quite another thing to assert jurisdiction to immunize these telephone companies from competition, where the telephone companies engage in activities which do not come within the scope of an essential public service. * * *

> "Further, this attempted usurpation of power cannot be justified on the ground that the activity of National constitutes unfair competition or interference with the telephone companies' property rights since these matters are for the courts. * * *

> "We conclude, therefore, that the commission lacks authority to prohibit, either directly or indirectly, a lawful business enterprise from competing with the telephone companies in nonpublic service areas * * *.

"We conclude then that there is no rational basis for that part of the tariff regulation which forbids the use of directory covers which contain advertising. Indeed, this type of regulation constitutes an unwarranted invasion of the home of a subscriber, who should remain free to use such covers, once in his possession, as he sees fit."

We find the reasoning of the Massachusetts and New York Courts persuasive and conclude that the order of the Commission is in excess of its statutory authority and is arbitrary and capricious. The decision of the Court of Appeals is, therefore, reversed and the order of the Utilities Commission is declared null and void.

Reversed.

Justice BRANCH did not participate in the consideration or decision of this matter.