**IN RE STATE EX REL. UTIL. COMM. v. MOUNTAIN ELEC. COOPERATIVE**

[108 N.C. App. 283 (1992)]

IN THE MATTER OF STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, AND SOLOMON HORNEY, APPELLEES v. MOUNTAIN ELECTRIC COOPERATIVE, INC., AND NORTH CAROLINA ELECTRIC MEMBERSHIP CORPORATION, APPELLANTS

No. 9110UC713

(Filed 15 December 1992)

**Energy § 18 (NCI4th) — electric membership corporation — line siting complaint — jurisdiction of Utilities Commission**

The Utilities Commission had jurisdiction under N.C.G.S. § 62-42 to hear and resolve a complaint against an electric membership corporation involving the siting of a 69 kilovolt electric transmission line.

**Am Jur 2d, Public Utilities § 232.**

Judge GREENE dissenting.

Appeal by respondent Mountain Electric Cooperative, Inc., and intervenor North Carolina Electric Membership Corporation from order issued 28 January 1991 by the North Carolina Utilities Commission. Heard in the Court of Appeals 13 May 1992.

*Public Staff of the North Carolina Utilities Commission, by Chief Counsel Antoinette R. Wike and Staff Attorney A.W. Turner, Jr., for complainant-appellee.*

*Crisp, Davis, Schwentker, Page & Currin, by Robert B. Schwentker, for respondent-appellant Mountain Electric Cooperative, Inc.*

*Associate General Counsel Thomas K. Austin for respondent-appellant North Carolina Electric Membership Corporation.*

PARKER, Judge.

The sole issue presented by this appeal is whether the North Carolina Utilities Commission ("the Commission") lacked jurisdiction over a dispute arising from the proposed siting of an electrical transmission line. We conclude the Commission possessed statutory authority to hear and resolve the dispute and thus affirm the result below.

This proceeding was commenced by a 14 February 1990 letter to the chairman of the Commission from complainant Solomon Horney in which he voiced dissatisfaction with the proposal of respondent Mountain Electric Cooperative, Inc., ("MEC") to build a 69 kilovolt transmission line from near Horney's residence to the top of Beech Mountain, North Carolina. Treating the letter as a complaint, on 22 February 1990 the Commission issued an order serving the complaint upon respondent MEC. On 27 February respondent North Carolina Electric Membership Corporation petitioned to intervene and also moved to dismiss the proceeding for lack of jurisdiction. The petition to intervene was granted. On 16 March 1990 respondent MEC answered the complaint and moved to dismiss for lack of jurisdiction. In its order dated 31 July 1990, the Commission concluded it had jurisdiction over the parties' dispute and denied the motions to dismiss. The case was set for hearing on 18 October 1990.

After hearing the dispute, in an order issued 28 January 1991 the Commission reaffirmed its earlier conclusion as to jurisdiction and made lengthy findings of fact and conclusions of law. Concluding that in no instance had respondent MEC acted arbitrarily or capriciously with respect to siting the line, the Commission found in favor of respondents.

Appellants argue that the Commission concluded it had jurisdiction under N.C.G.S. § 62-42 to hear the complaint "[o]nly by employing the most contorted and convoluted semantics imaginable." We do not agree.

"The Utilities Commission, being an administrative agency created by statute, has no regulatory authority except such as is conferred upon it by Ch[apter] 62 of the General Statutes." *Utilities Comm. v. Merchandising Corp.*, 288 N.C. 715, 722, 220 S.E.2d 304, 308 (1975) (citation omitted) (holding Commission lacked statutory authority to enact a rule giving a telephone public utility a monopoly on advertising by its business subscribers). Except where expressly provided by Chapter 62, the designation "public utility" does not include electric membership corporations. N.C.G.S. § 62-3(23)(d) (1989). Services and facilities of electric membership corporations are subject to regulation by the Commission as though such corporations were public utilities:

(a) Except as otherwise limited in this Chapter, whenever the Commission, after notice and hearing had upon its own motion or upon a complaint, finds:

(1) That the service of any public utility is inadequate, insufficient or unreasonably discriminatory, or

. . . .

(3) That additions, extensions, repairs or improvements to, or changes in, the existing plant, equipment, apparatus, facilities or other physical property of any public utility, o[r] any two or more public utilities ought reasonably to be made, or

(4) That it is reasonable and proper that new structures should be erected to promote the security or convenience or safety of its patrons, employees and the public, or

(5) That any other act is necessary to secure reasonably adequate service or facilities and reasonably and adequately to serve the public convenience and necessity,

the Commission shall enter and serve an order directing that such additions, extensions, repairs, improvements, or additional services or changes shall be made or [e]ffected within a reasonable time . . . .

. . . .

(c) For the purpose of this section, "public utility" shall include any electric membership corporation operating within this State.

N.C.G.S. § 62-42 (1989). Similarly, such corporations are subject to regulation as public utilities for purposes of the certification required for construction of generating facilities, N.C.G.S. § 62-110.1 (1989); the assignment of service areas, N.C.G.S. § 62-110.2 (Supp. 1991); rate filings, N.C.G.S. § 62-138 (1989); and the prohibition against granting unreasonable preferences in services or rates, N.C.G.S. § 62-140 (1989).

The 31 July 1990 order of the Commission denying respondents' motions to dismiss, reaffirmed in the order issued 28 January 1991, stated that the Commission agreed with the Public Staff that the statute which vests the Commission with jurisdiction to hear such

complaints is N.C.G.S. § 62-42. Given that subsection (c) of the statute authorizes the Commission to treat electric membership corporations as public utilities, the Commission looked to prior decisions in which it held it had jurisdiction to hear and determine complaints against electric public utilities involving the siting of transmission and distribution lines. *See, e.g., Crohn v. Power Co.,* 78 Report of the N.C. Utilities Comm. 213 (1988) (affirming denial of electric public utility's motion to dismiss for lack of jurisdiction over 100 kilovolt line site dispute); *Gwynn Valley v. Power Co.,* 78 Report of the N.C. Utilities Comm. 186 (1988) (same as to 44 kilovolt line site dispute); *Town v. Electric and Power Co.,* 73 Report of the N.C. Utilities Comm. 102 (1983) (no challenge to jurisdiction of Commission over 115 kilovolt line site dispute); and *Kirkman v. Power Co.,* 64 Report of the N.C. Utilities Comm. 89 (1974) (affirming denial of electric public utility's motion to dismiss for lack of jurisdiction over 230 kilovolt line site dispute). The Commission reviewed the statutes it had previously read together and construed as providing jurisdiction to hear such complaints against electric public utilities. Turning to N.C.G.S. § 62-42, the Commission reasoned that under the plain language of subsection (c), this statute applied "to electric membership corporations in the same manner and to the same degree as . . . to a public utility such as Duke Power Company or Carolina Power & Light Company."

According to the Commission, N.C.G.S. § 62-42(a)(1), (3), and (5) could be read singly or together to give jurisdiction to hear line siting complaints against an electric membership corporation. The Commission placed particular emphasis on subsection (a)(5), since the obligations of electric public utilities arising out of the public convenience and necessity standard include an obligation to give due regard to the environmental policy set forth in Chapter 113A of the General Statutes.

Respondents argue for a very narrow construction of N.C.G.S. § 62-42, but they have not advanced any reason why, in light of subsection (c), this Court should hold that the Commission may treat line siting complaints against electric membership corporations differently from those against electric public utilities. Finding the careful and thorough reasoning of the Commission persuasive, we hold it did not err in concluding it had jurisdiction to hear and resolve such complaints against electric membership corporations.

**IN RE STATE EX REL. UTIL. COMM. v. MOUNTAIN ELEC. COOPERATIVE**

[108 N.C. App. 283 (1992)]

As of 1 December 1991, North Carolina public utilities law makes explicit provision for the Commission to resolve some disputes over the siting by public utilities, including electric membership corporations, of electrical transmission lines. *See* N.C.G.S. §§ 62-100 — 62-107 (Supp. 1991). A statutory resolution process exists only for disputes involving lines designed to carry 161 kilovolts or more. *See* N.C.G.S. § 62-101(c)(1) (Supp. 1991). Where one statute deals with a particular situation in detail but another "deals with it in general and comprehensive terms, the particular statute will be construed as controlling absent a clear legislative intent to the contrary." *Merritt v. Edwards Ridge*, 323 N.C. 330, 337, 372 S.E.2d 559, 563 (1988) (construing antideficiency statute and comprehensive statute governing awards of attorney's fees and holding antideficiency statute controlled and prohibited award of such fees). We are not convinced that a conflict necessarily exists between the more general statutory framework construed hereinabove to permit the Commission to hear disputes about electrical line siting and the more recent statutes which govern in detail the resolution of such disputes about lines carrying 161 or more kilovolts. Nevertheless, we leave for another day the question of whether the statutes permit the Commission after the effective date of N.C.G.S. §§ 62-100 *et seq.* to continue to resolve, in the same manner as before, disputes involving lines carrying less than 161 kilovolts.

Affirmed.

Judge COZORT concurs.

Judge GREENE dissents with separate dissenting opinion.

Judge GREENE dissenting.

I do not agree with the majority that N.C.G.S. § 62-42 vests the North Carolina Utilities Commission (Commission) with jurisdiction to adjudicate disputes regarding the siting of transmission lines. I read Section 62-42 as relating to the need for improvements or changes in *existing* services, not the review of the siting of new transmission lines. This view is substantiated by N.C.G.S. § 62-101, which was enacted by the legislature in 1991, and made effective 1 December 1991. This statute does vest the Commission with the jurisdiction to adjudicate the siting of transmission lines by any public utility, including electric membership corporations, provided the line has a designed capacity of at least 161 kilovolts.

BALLANCE v. N.C. COASTAL RESOURCES COMM.

[108 N.C. App. 288 (1992)]

*See* N.C.G.S. § 62-100(6), (7) (Supp. 1992). This amendment to Chapter 62 reflects an acknowledgement by the legislature that it was creating a right in the Commission that did not previously exist. *See Childers v. Parker's. Inc.*, 274 N.C. 256, 260, 162 S.E.2d 401, 483 (1968).

Because the Commission has no regulatory authority except as conferred upon it by Chapter 62, *State ex rel. Utilities Comm'n v. National Merchandising Corp.*, 288 N.C. 715, 722, 220 S.E.2d 304, 308 (1975), and because there did not exist any authority in 1990 for the Commission to regulate the siting of transmission lines, I would vacate the order of the Commission as being entered without jurisdiction.