STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, PUBLIC STAFF— NORTH CAROLINA UTILITIES COMMISSION AND PROGRESS ENERGY CAROLINAS, INC., APPELLEES v. JOHN W. WARDLAW, JR., MARTHA C. W. STUHMER, THOMAS F. ROBERTS, JR., JOHN P. MEDLIN, FRANK B. MEDLIN, WESTCHASE INVESTORS, L.L.C., CB WESTCHASE, INC., R. MICHAEL CONDREY, JOSEPH H. LEVINSON AND WIFE, THEODOSIA LOUISE LEVINSON, WILLIAM T. SANDERS, JAMES R. LEVINSON AND WIFE, GINGER T. LEVINSON, JOSEPH LEE LEVINSON, ANN LEVINSON MUNDAY AND HUSBAND, CARL B. MUNDAY, NANCY L. EASON AND HUSBAND, FRANK E. EASON, CAMPBELL UNIVERSITY, INCORPORATED, SUSAN JONES DREHER AND HUSBAND, JAMES DREHER, AND WALTON DAVID PARKER, JR. AND WIFE, LOIS C. PARKER, APPELLANTS

No. COA05-1481

(Filed 3 October 2006)

**1. Utilities— transmission line—preferred route—routing study**

The Utilities Commission did not err by approving Progress Energy's final preferred route for a transmission line as analyzed and recommended by Progress Energy's routing study, because: (1) the Commission considered the evidence presented in Progress Energy's routing study and at the public hearings on 9 November 2004 and 4 January 2005, including testimony of three expert witnesses who testified to the merits of the preferred and approved route; (2) the Commission made numerous findings regarding the preferred route; (3) the Court of Appeals' review is

limited to whether the Commission considered the factors required by law and whether its findings are supported by competent, substantial, and material evidence in view of the whole record; and (4) the Court of Appeals is not permitted to review the weight and credibility the Commission gave, or substitute its judgment for the substantial evidence presented regarding the preferred route, Progress Energy's routing study, or the future needs of the North Carolina State University's School of Veterinary Medicine.

**2. Utilities— transmission line—burden of proof—alternate route corridors—preferred route**

The Utilities Commission did not improperly place the burden of proof on intervenors to show that one or more of Progress Energy's alternate route corridors for a transmission line was superior to Progress Energy's preferred route and of Progress Energy's ability to cross the alternate routes, because: (1) under N.C.G.S. § 62-105(a), the Commission properly assigned to Progress Energy the initial burden of proving it had examined alternative routes and its preferred route was reasonable and in the public interest; (2) after Progress Energy met this burden, the Commission properly assigned to intervenors the burden of proving an alternate route studied by the utility is preferable to that proposed or that the utility did not consider or appropriately weigh relevant factors in reaching its decision; and (3) nothing in the record shows the Commission failed to properly apply N.C.G.S. § 62-105(a).

**3. Appeal and Error— preservation of issues—failure to cite authority**

Although intervenors contend the Utilities Commission's approval of Progress Energy's preferred route for a transmission line was arbitrary and capricious, this assignment of error is dismissed, because: (1) intervenors failed to cite any authority in support of their argument; and (2) it is not the role of the appellate courts to create an appeal for an appellant.

Appeal by appellants from order entered 8 April 2005 by the North Carolina Utilities Commission. Heard in the Court of Appeals 15 August 2006.

*Staff Attorney James D. Little, for appellee Public Staff-North Carolina Utilities Commission.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by James K. Dorsett, III, Dwight W. Allen, and Jackson Wyatt Moore, Jr., for appellee Progress Energy Carolinas, Inc.*

*Crisp, Page & Currin, LLP, by Robert F. Page, for appellants.*

TYSON, Judge.

John W. Wardlaw, Jr., Martha C. W. Stuhmer, Thomas F. Roberts, Jr., John P. Medlin, Frank B. Medlin, Westchase Investors, L.L.C., CB Westchase, Inc., R. Michael Condrey, Joseph H. Levinson, Theodosia Louise Levinson, William T. Sanders, James R. Levinson, Ginger T. Levinson, Joseph Lee Levinson, Ann Levinson Munday, Carl B. Munday, Nancy L. Eason, Frank E. Eason, Campbell University, Incorporated, Susan Jones Dreher, James Dreher, Walton David Parker, Jr., and Lois C. Parker ("intervenors") appeal from the North Carolina Utilities Commission's (the "Commission") order granting Progress Energy Carolinas, Inc. ("Progress Energy") a Certificate of Environmental Compatibility and Public Convenience and Necessity. We affirm the Commission's order.

## I.  Background

On 23 July 2004, Progress Energy applied to obtain a Certificate of Environmental Compatibility and Public Convenience and Necessity to construct approximately 4.3 miles of 230 kilovolt transmission line in Wake County pursuant to N.C. Gen. Stat. § 62-100 and Rule 8-62 of the Rules and Regulations of the Commission. The proposed transmission line was required to energize a new distribution substation to be constructed by Progress Energy on Trenton Road in Cary, North Carolina. A document identified as "Routing Study and Environmental Report for the Trenton Road Transmission Line Tap Project" ("routing study") was prepared to determine the best path to route the new line. The routing study identified 109 possible alternate routes for the line to energize the substation. Progress Energy conducted private meetings with public officials and meetings with the general public to evaluate the suitability of the alternate routes. The public's input was considered to select the rating categories and relative weights to be assigned to the categories. Progress Energy selected the route with the fourth best cumulative rating score.

The Commission scheduled a public hearing on 9 November 2004. Intervenors petitioned to intervene on 29 October 2004. The Commission granted intervenors' petition on 3 November 2004 and issued

its order granting Progress Energy's request on 8 April 2005. Intervenors appeal.

## II. Issues

Intervenors argue the Commission erred by: (1) approving the final "preferred route" recommended by Progress Energy; (2) giving favorable consideration to the Progress Energy routing study; (3) relying on the alleged future needs of the North Carolina State University's School of Veterinary Medicine in approving Progress Energy's preferred route; (4) placing the burden of proof on intervenors to show one or more of the alternate route corridors was superior over Progress Energy's preferred route and to show Progress Energy could access the alternate route corridors; and (5) issuing the order approving the preferred route, which is arbitrary and capricious.

## III. Standard of Review

N.C. Gen. Stat. § 62-105(a) (2005) mandates:

The Commission shall grant a certificate for the construction, operation, and maintenance of the proposed transmission line if it finds:

(1) That the proposed transmission line is necessary to satisfy the reasonable needs of the public for an adequate and reliable supply of electric energy;

(2) That, when compared with reasonable alternative courses of action, construction of the transmission line in the proposed location is reasonable, preferred, and in the public interest;

(3) That the costs associated with the proposed transmission line are reasonable;

(4) That the impact the proposed transmission line will have on the environment is justified considering the state of available technology, the nature and economics of the various alternatives, and other material considerations; and

(5) That the environmental compatibility, public convenience, and necessity require the transmission line.

N.C. Gen. Stat. § 62-94 (2005) provides the standard of review for this Court:

The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

(C) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error. The appellant shall not be permitted to rely upon any grounds for relief on appeal which were not set forth specifically in his notice of appeal filed with the Commission.

Over twenty-five years ago, this Court stated:

[T]he Commission's order [should] be affirmed if, upon consideration of the whole record as submitted, the facts found by the Commission are supported by competent, material and substantial evidence, taking into account any contradictory evidence or evidence from which conflicting inferences could be drawn. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

. . . .

In the review of orders from the Commission by this Court, our action is guided by N.C.G.S. 62-94, and where the Commission's actions do not violate the Constitution or exceed statutory authority, appellate review is limited to errors of law, arbitrary action, or decisions unsupported by competent, material and substantial evidence. We look to the findings of fact and conclusions of the Commission and determine whether the Commission has

considered the factors required by law and whether its findings are supported by competent, substantial and material evidence in view of the whole record.

*Utilities Comm. v. Springdale Estates Assoc.*, 46 N.C. App. 488, 490-91, 265 S.E.2d 647, 649-50 (1980) (internal quotations and citations omitted).

Ten years ago, this Court stated, "When applying the whole record test, the court may not replace the Commission's judgment with its own when there are two reasonably conflicting views of the evidence." *State ex rel. Utilities Comm. v. Public Staff*, 123 N.C. App. 43, 46, 472 S.E.2d 193, 196 (1996).

## IV. Preferred Route

[1] Intervenors argue the Commission erred when it approved Progress Energy's final preferred route as analyzed and recommended by Progress Energy's routing study. Intervenors contend the preferred route was not one of the 109 alternate routes studied by Progress Energy. The record indicates the route approved was studied and ranked as the fourth best route. Intervenors also argue the Commission erred when it gave favorable consideration to Progress Energy's routing study and when it relied on the alleged future needs of the North Carolina State University's School of Veterinary Medicine in approving Progress Energy's preferred route.

Our Supreme Court has stated:

G.S. 62-26.3 requires: all final orders and decisions of the Commission shall be sufficient in detail to enable the court on appeal to determine the controverted questions presented in the proceedings and shall include (1) findings and conclusions and the reasons or basis therefor upon all the material issues of fact, law, or discretion presented in the record, and (2) the appropriate rule, order, sanction, relief, or statement of denial thereof.

*Utilities Com. v. Membership Corporation*, 260 N.C. 59, 62, 131 S.E.2d 865, 867 (1963) (internal quotations and citations omitted).

Our Supreme Court has stated, "The weighing of the evidence and the drawing of the ultimate conclusion is for the Commission, not the reviewing court." *State ex rel. Utilities Comm. v. Public Staff*, 323 N.C. 481, 491, 374 S.E.2d 361, 367 (1998) (internal quotations and citations omitted). This Court has stated, "the credibility and weight of testimony are matters to be determined by the Commission." *State ex*

*rel. Utilities Comm. v. Village of Pinehurst*, 99 N.C. App. 224, 227, 393 S.E.2d 111, 113 (1990), *aff'd*, 331 N.C. 278, 415 S.E.2d 199 (1992).

The record indicates the Commission considered evidence from both Progress Energy and intervenors. The Commission's order provides:

> On November 9, 2004, a public hearing was held in Raleigh. Ten non-Intervenor public witnesses . . . presented the testimony . . . of six witnesses.

> On November 15, 2004, the Commission issued an Order Rescheduling Evidentiary Hearing and Establishing Dates for Prefiled Testimony. On November 19, 2004, [Progress Energy] filed direct testimony for Steve Wilson, James Umbdenstock, and Chris Wood. On December 3, 2004, the Intervenors filed direct testimony for John W. Wardlaw, Jr. and Patrick N. Connell, and direct testimony and exhibits for Gregory L. Booth.

> On January 4, 2005, an evidentiary hearing was held in Raleigh. One public witness, Ted Shear, appeared at the hearing and testified. [Progress Energy] presented the direct testimony, exhibits and rebuttal testimony of Steve Wilson, James Umbdenstock, and Chris Wood. The intervenors presented the direct testimony and exhibits of Gregory L. Booth, Patrick Connell, and John W. Wardlaw, Jr.

James Umbdenstock, a Progress Energy engineer and responsible for power distribution planning, testified regarding the necessity for the construction of the transmission line and substation to be located at Trenton Road. He stated:

> The proposed substation and new 230-kV line will relieve the overloading on the existing distribution feeders and substation and will provide the electric system infrastructure necessary for the reliable electric service required by the continuing commercial development in the area.

> Customer growth in population and electric usage, due to proposed development and expansion in this area, is expected to place greater demands on the distribution and transmission systems.

> . . . .

**STATE EX REL. UTILS. COMM'N v. WARDLAW**

[179 N.C. App. 582 (2006)]

This project will improve the power quality and reliability in the area, and reduce the frequency and duration of potential power outages. Without the new substation, transmission line and related distribution system upgrades, load in the area would exceed the electric system capability in the near future.

Steve Wilson, a Progress Energy Project Manager in the transmission department, testified regarding the path or route selection process for the proposed Trenton Road transmission line. He testified:

After establishing the study area, potential alternative routes were identified for the project. The objective was to identify the routes connecting the existing Durham-Method 230-kV transmission line and the proposed new Trenton Road 230-kV Substation while avoiding or minimizing impacts to both human and natural resources. Local, state and federal government agencies were contacted to gather information on new or proposed developments and other constraints relevant to the routing process. . . . If a serious problem, such as a new home or business, was identified along a route, adjustments were made to the route to minimize the potential impacts or the route was removed from consideration.

. . . .

The preferred route received one of the lowest (i.e., best) overall weighted scores of all the proposed routes, indicating that it would have one of the lowest overall impacts on the human and natural environment. Although the preferred route was not the top scoring route, this route was selected over the top three scoring routes because it avoids traffic concerns.

Anthony Wood, a senior Environmental Scientist and Project Manager for Burns McDonnell Engineering Company, testified regarding the potential environmental impacts of the transmission line. He testified:

The preferred route was selected because it avoids planned development to the extent feasible; provides a transmission source for the planned new substation to serve the growing load at the Centennial Biomedical Campus and surrounding area; meets the overall requirements of the State, which is the largest landowner in the area, and the City of Raleigh for land use in the

area; uses existing corridors for the majority of length; and avoids environmentally sensitive areas.

The preferred route parallels existing road right-of-way for over 50 percent of the route, which reduces the required right-of-way and minimizes impacts to agricultural land, woodland and wetlands. Over two-thirds of the length of the proposed route is on State lands.

Based on the "testimony and exhibits received at the hearing and in Progress Energy's Application, including the Routing Study," the Commission made the following findings of fact:

3. Current and projected electric load in the West Raleigh-Cary area of Wake County continues to grow. Over the last five years, electrical demand in this area of Wake County has grown at about 3.6 percent per year, or approximately one and one-half times the rate for most of [Progress Energy]'s service area. The area surrounding the RBC Center has begun to experience commercial development, and with an abundance of vacant land adjacent to the entertainment complex, growth is expected to continue over the next several years. Unless [Progress Energy] constructs a new 230 kV transmission line and substation in this area, the demand for electricity will exceed the capability of the existing facilities in the West Raleigh-Cary area in the near future.

4. To determine the appropriate route for the proposed transmission line, [Progress Energy] analyzed numerous alternatives. Such analyses consisted of identifying alternative routes, gather public input and evaluating such routes based upon their length and impact upon the social and natural environment, existing homes and businesses, and future development.

5. The most appropriate route for the new transmission line is the preferred route proposed by [Progress Energy] that originates at a new substation to be located in the southwest corner of the Wade Avenue, Interstate 40 (I-40), and Trenton Road Intersection and extends 4.3 miles to [Progress Energy]'s existing Durham-Method 230kV transmission line, which runs in a southeast-northwest direction northeast of Reedy Creek Road. The proposed transmission line will be located in the general vicinity of I-40, Trinity Road and Blue Ridge Road.

. . . .

8. When compared with reasonable alternative courses of action, construction of the transmission line in the proposed location is reasonable, preferred, and in the public interest.

. . . .

10. The impact the proposed transmission line will have on the environment is justified considering the state of available technology, the nature and economics of the various alternatives, and other material considerations.

In its "Discussion of Evidence and Conclusions," the Commission addressed the necessity of the proposed line and objections to the preferred route. With regard to the necessity of the proposed line, the Commission stated:

Construction of a new transmission line and substation will provide the additional capacity needed to reliably meet the long-term electrical needs of the area and prevent overloading of existing electrical supply facilities. In addition, the proximity of the new substation to the growing number of customers in the area will result in shorter distribution feeders, which will improve power quality and reliability of service to [Progress Energy]'s customers due to reduced exposure to potential causes of disturbances and outages.

With regard to intervenors' objections to the preferred route, the Commission considered "community opinions and values relative to the proposed project." The Commission considered "Input [] first obtained through meetings with public officials and local agencies, and then through public information meetings." Progress Energy utilized several routing criteria to determine the best route, including: (1) the residential proximity from each proposed segment; (2) the number of commercial buildings near the line; (3) the amount of land to be cleared; (4) the amount of wetlands to be crossed; (5) the number of streams to be crossed; (6) the visibility of the new line to the public; (7) the length of the line; and (8) the number of heavy angles. The Commission held, "Based upon these factors (weighted as appropriate based upon public input) and Progress Energy's experience in routing transmission lines, Progress Energy chose the preferred route." The Commission stated:

The preferred route was selected from over one hundred routes considered for these reasons: it avoids planned development to

STATE EX REL. UTILS. COMM'N v. WARDLAW

[179 N.C. App. 582 (2006)]

the extent feasible; it provides a transmission source for the planned new substation to serve the growing load at the Centennial Biomedical Campus and surrounding area; it meets the overall requirements of the State (the largest landowner in the area) and the City of Raleigh for land use in the area; it uses existing corridors for the majority of its length; and it avoids environmentally sensitive areas.

The Commission also stated, "[w]hile the preferred route does not have the [best] score for all of the routing factors, most of its values were among the best scores of all the routes." The Commission concluded:

> After careful consideration, the Commission concludes that [Progress Energy] has demonstrated that the proposed transmission line is necessary for an adequate and reliable supply of electric energy; that the proposed location is preferred, and in the public interest; that the costs associated with the proposed transmission line are reasonable; and that the environmental compatibility, public convenience, and necessity require the proposed line.

Intervenors' argument that "there is not even a 'scintilla' of evidence in the record to support Progress Energy's selection of its 'preferred route'" is without merit. The Commission considered the evidence presented in Progress Energy's routing study and at the public hearings on 9 November 2004 and 4 January 2005, including testimony of three expert witnesses who testified to the merits of the preferred and approved route. The Commission made numerous findings regarding the preferred route.

Intervenors have requested this Court to consider the weight and credibility of the evidence before the Commission. Our review is limited to whether or not the Commission "considered the factors required by law and whether its findings are supported by competent, substantial and material evidence in view of the whole record." *Utilities Comm. v. Springdale Estates Assoc.*, 46 N.C. App. at 494, 265 S.E.2d at 651. Our standard of review does not permit this Court to review the weight and credibility the Commission gave, or substitute our judgment for, the substantial evidence presented regarding the preferred route, Progress Energy's routing study, or the future needs of the North Carolina State University's School of Veterinary Medicine. These assignments of error are overruled.

## V.  Burden of Proof

[2] Intervenors argue the Commission improperly placed the burden of proof on them to show that one or more of Progress Energy's alternate route corridors was superior to Progress Energy's preferred route and of Progress Energy's ability to cross the alternate routes.

N.C. Gen. Stat. § 62-105(a) (2005) mandates, "[t]he burden of proof is on the applicant in all cases under this Article, except that any party proposing an alternative location for the proposed transmission line shall have the burden of proof in sustaining its position."

Intervenors argue "[i]nstead of requiring [Progress Energy] to assume the 'burden' of proving that its 'preferred route' is best, the Commission has, instead, improperly and unlawfully imposed a 'burden of proof' on the Intervenors/Appellants to demonstrate that the Progress Energy 'preferred route' is not the best." We disagree.

Regarding Progress Energy's burden of proof, the Commission quoted N.C. Gen. Stat. § 62-105(a) and applied its mandates to Progress Energy's application. The Commission stated, "[T]he electric utility applying for approval to site a transmission line has the initial burden of proof, including that it examined 'reasonable alternative courses of action' and that 'construction of the transmission line in the proposed location is reasonable, preferred, and in the public interest.' " The Commission concluded Progress Energy had met its burden and granted it a Certificate of Environmental Compatibility and Public Convenience and Necessity.

With regard to intervenors' burden of proof, the Commission stated:

> the burden of proof has not been met by the Intervenors, as required by G.S. 62-105(a), with regard to any alternative route for the transmission line. The Intervenors have not proven that any of their alternatives is preferable to the proposed route, would provide long-term reliable electric service to the load in this high-growth area, or satisfies NCSU's need for a future transmission to distribution substation on campus. The evidence presented by Intervenors involved their opposition to the line being placed upon their respective properties, or in close proximity, and the allegation that [Progress Energy] could use an alternate route and thus avoid their properties. These issues raised by the Intervenors are not relevant to the Commission's determination

of need. None of the Intervenors presented any evidence on the feasibility of cost consequences of their proposals or the impact on other property owners.

Pursuant to N.C. Gen. Stat. § 62-105(a), the Commission properly assigned to Progress Energy the initial burden of proving it had examined alternative routes and its preferred route was reasonable and in the public interest. After Progress Energy met this burden, the Commission properly assigned to intervenors the burden of proving "an alternative route studied by the utility is preferable to that proposed or that the utility did not consider or appropriately weigh relevant factors in reaching its decision." N.C. Gen. Stat. § 62-105(a). Nothing in the record shows the Commission failed to properly apply N.C. Gen. Stat. § 62-105(a). This assignment of error is overruled.

## VI.  Arbitrary and Capricious

[3] Intervenors argue the Commission's approval of Progress Energy's preferred route is arbitrary and capricious.

N.C.R. App. P. 28(a) (2005) provides, "The function of all briefs required or permitted by these rules is to define clearly the questions presented to the reviewing court and *to present the arguments and authorities upon which the parties rely* in support of their respective positions thereon." (emphasis supplied).

Intervenors have failed to cite any "authorities upon which [they] rely." *Id.* "It is not the role of the appellate courts . . . to create an appeal for an appellant . . . the Rules of Appellate Procedure must be consistently applied; otherwise, the Rules become meaningless." *Viar v. N.C. DOT*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). This assignment of error is dismissed.

## VII.  Conclusion

The Commission properly approved Progress Energy's final preferred route. Under the controlling statute and our standard of review, this Court's cannot "weigh[] . . . the [credibility of the] evidence and . . . draw[] . . . the ultimate conclusion." *State ex rel. Utilities Comm. v. Public Staff*, 323 N.C. at 491, 374 S.E.2d at 367 (internal quotations and citations omitted).

The Commission did not improperly shift the burden of proof to intervenors rather than to Progress Energy. N.C. Gen. Stat.

§ 62-105(a). Intervenors fail to cite authority to support their argument that the Commission's final order is arbitrary and capricious in accordance with N.C.R. App. P. 28. The Commission's order is affirmed.

Affirmed.

Judges WYNN and HUDSON concur.