STATE ex rel. UTILS. COMM'N v. TOWN OF KILL DEVIL HILLS

[194 N.C. App. 561 (2009)]

STATE OF NORTH CAROLINA ex rel. UTILITIES COMMISSION, VIRGINIA ELECTRIC AND POWER COMPANY d/b/a DOMINION NORTH CAROLINA POWER, Complainants-Appellees and PUBLIC STAFF—NORTH CARLLINA UTILITIES COMMISSION, Intervenor-Appellees v. TOWN OF KILL DEVIL HILLS, Intervenor-Appellant

No. COA08-42

(Filed 6 January 2009)

## 1. Utilities— electrical transmission lines—siting—jurisdiction of Utilities Commission

The Utilities Commission had jurisdiction to hear a dispute over the siting of a high capacity electrical transmission line where defendant town argued that a more recent statutory provision divested the Commission of jurisdiction by negative implication. Repeals by implication are not favored, the Commission correctly reasoned that the statutes serve different purposes and can be reconciled, and giving full effect to any municipal ordinance could result in a chaotic condition interfering with the ability of the utility to render equal service.

## 2. Utilities— electrical transmission lines—siting—jurisdiction of Utilities Commission—exhaustion of remedy

The Utilities Commission was the appropriate body to hear a dispute concerning high capacity electrical transmission lines on the Outer Banks where defendant town argued that Dominion (the utility) failed to exhaust its administrative remedies. Although the town could have granted a variance to allow Dominion to build the proposed new line, the town has cited no authority or precedent that would require Dominion to seek such a variance where an administrative agency specifically designed to handle such disputes has jurisdiction.

## 3. Utilities— electrical transmission lines—siting—municipal ordinances—Commission authority

The Utilities Commission did not err by directing that new electrical power lines be placed in Kill Devil Hills in contravention of municipal ordinances. Although defendant town argued that their ordinances were consistent with public welfare and were within their general police power, the issue was whether the town's ordinances were consistent with state law, and not whether they were reasonable.

**4. Utilities— electrical transmission lines—siting—burden of proof**

In a case involving the siting of electrical transmission lines, the Utilities Commission appropriately placed the burden of proof on the utility (Dominion) as to whether defendant town's ordinances were invalid given the Commission's authority and duty to compel certain improvements in accordance with the purposes of the Public Utilities Act.

**5. Utilities— electrical transmission lines—siting—factors— not mandatory**

The Utilities Commission did not err by failing to apply the factors applicable to transmission line siting disputes. The case relied upon by defendant town simply addressed the arguments raised in that case and did not establish mandatory factors.

**6. Utilities— electrical transmission lines—siting—sea side**

The Utilities Commission did not err in a case involving the disputed placement of an electrical transmission line on the Outer Banks by determining that the line should be placed along the east or ocean side of Kill Devil Hills. There was competent, substantial and material evidence to support findings that other options were not reasonable, practical, or feasible.

Judge JACKSON dissenting.

Appeal by intervenor Town of Kill Devil Hills from an order entered 18 September 2007 by the North Carolina Utilities Commission. Heard in the Court of Appeals 21 May 2008.

*McGuire Woods, LLP, by E. Duncan Getchell, Jr., Stephen H. Watts, II, Robert L. Hodges, and Kristian Mark Dahl; Law Office of Robert W. Kaylor, P.A., by Robert W. Kaylor; Dominion Resources Services, Inc. by Vishwa B. Link and Pamela Johnson Walker, for complainant-appellee Virginia Electric and Power Company d/b/a Dominion North Carolina Power.*

*Chief Counsel Antoinette R. Wike and Staff Attorney Robert S. Gillam, for intervenor-appellee Public Staff—North Carolina Utilities Commission.*

*Williams Mullen Maupin Taylor, by M. Keith Kapp, Kevin W. Benedict, and Jennifer A. Morgan; Sharp, Michael, Graham and Evans, LLP, by Steven D. Michael, for intervenor-appellant Town of Kill Devil Hills.*

STATE ex rel. UTILS. COMM'N v. TOWN OF KILL DEVIL HILLS

[194 N.C. App. 561 (2009)]

HUNTER, Judge.

The Town of Kill Devil Hills ("the Town" or "Kill Devil Hills") appeals from an order by the North Carolina Utilities Commission ("the Commission") which preempted the Town's zoning ordinances and directed Dominion North Carolina Power ("Dominion") to site an overhead transmission line through Kill Devil Hills. After careful review, we affirm the ruling of the Commission.

Kill Devil Hills is a municipality on the Outer Banks of North Carolina, a narrow barrier island. Dominion provides electrical services to the northern Outer Banks, including Kill Devil Hills, and also provides wholesale service to Cape Hatteras Electric Membership Corporation ("Cape Hatteras EMC"), which serves Hatteras Island. Dominion's transmission facilities currently include two 230-kilovolt ("kV") overhead lines extending from the Fentress Substation in southeastern Virginia to the Shawboro Substation in Currituck County and on to the Kitty Hawk Substation in Dare County, a short distance north of the Town. A 115 kV overhead line extends from the Kitty Hawk Substation through the Town's corporate limits to the Nags Head Substation, where Dominion's facilities connect with those of Cape Hatteras EMC. This 115 kV line passes through a residential area on the west side (sound side) of the Town.

Dominion has determined that there is a need for additional transmission facilities in the area. The customer load on the existing 115 kV line is already in excess of Dominion's reliability guideline, and it is forecast to exceed the line's maximum load capacity by 2013. Therefore, Dominion proposed to build a new 115 kV overhead line extending eastward from the Kitty Hawk Substation to the U.S. Highway 158 Bypass and then southward along the Bypass to Structure 127 in northern Nags Head, where it will connect with the existing line. The proposed line would run along the east side (ocean side) of the Town.

The Town's Board of Commissioners ("the Board") objected to Dominion's proposal, and on 14 August 2006, the Board adopted an ordinance amending the zoning chapter of the Kill Devil Hills Town Code. The ordinances provide that all above-ground electric transmission lines within Town limits must be built in a single corridor. Underground transmission lines are not subject to this requirement. The stated purposes of the ordinances are, among others, to "preserve and enhance scenic views . . . and historical venues[,]" to "pre-

vent the proliferation of unsightly overhead transmission lines," and to "safeguard and enhance property values[.]"

Following the adoption of the ordinances, Dominion filed a complaint with the Commission seeking to preempt the ordinances and to allow Dominion to site a second overhead transmission line in a new corridor through the Town. However, Dominion did not apply to the Town's Board for a conditional use permit or a variance. Dominion also filed suit against the Town in Dare County Superior Court, but that action was stayed.

On 2-3 May 2007, the Commission heard evidence on the siting of Dominion's proposed second transmission line. Thereafter, the Commission issued an order, which: directed Dominion to complete improvements pursuant to N.C. Gen. Stat. § 62-42 (2007); preempted the Town's ordinances; and directed Dominion to site a 115 kV overhead transmission line in a new transmission corridor along the east side (ocean side) of the Town.

Upon appeal from this order, Kill Devil Hills presents the following issues to this Court: (1) whether the Commission lacked jurisdiction to preempt the Town's ordinances; and (2) whether the Commission erred in concluding that the ordinances were invalid.

## I. Jurisdiction

The Town advances two arguments that the Commission lacked jurisdiction to enter the order. We address each in turn.

### A.

[1] First, the Town argues that the superior court had sole and exclusive jurisdiction to determine the validity of the Town's municipal ordinance. We disagree.

Section 12 of Article IV of the North Carolina Constitution provides that: "Except as otherwise provided by the General Assembly, the Superior Court shall have original general jurisdiction throughout the State." N.C. Const. art. IV, § 12. Consistent with this language, Section 3 of Article IV provides: "The General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created." N.C. Const. art. IV, § 3. The general grant of judicial power by the General Assembly to the Commission is found in N.C. Gen. Stat. § 62-60 (2007).

STATE ex rel. UTILS. COMM'N v. TOWN OF KILL DEVIL HILLS

[194 N.C. App. 561 (2009)]

N.C. Gen. Stat. § 62-42 provides the Commission with jurisdiction to hear petitions for extensions of services and facilities. That statute provides:

(a) Except as otherwise limited in this Chapter, whenever the Commission, after notice and hearing had upon its own motion or upon complaint, finds:

(1) That the service of any public utility is inadequate, insufficient or unreasonably discriminatory, or

(2) That persons are not served who may reasonably be served, or

(3) That additions, extensions, repairs or improvements to, or changes in, the existing plant, equipment, apparatus, facilities or other physical property of any public utility, of any two or more public utilities ought reasonably to be made, or

(4) That it is reasonable and proper that new structures should be erected to promote the security or convenience or safety of its patrons, employees and the public, or

(5) That any other act is necessary to secure reasonably adequate service or facilities and reasonably and adequately to serve the public convenience and necessity,

the Commission shall enter and serve an order directing that such additions, extensions, repairs, improvements, or additional services or changes shall be made or affected within a reasonable time prescribed in the order. This section shall not apply to terminal or terminal facilities of motor carriers of property.

(b) If such order is directed to two or more public utilities, the utilities so designated shall be given such reasonable time as the Commission may grant within which to agree upon the portion or division of the cost of such additions, extensions, repairs, improvements or changes which each shall bear. If at the expiration of the time limited in the order of the Commission, the utility or utilities named in the order shall fail to file with the Commission a statement that an agreement has been made for division or apportionment of the cost or expense, the Commission shall have the authority, after further hearing in the same proceeding, to make an order fixing the portion of such cost

or expense to be borne by each public utility affected and the manner in which the same shall be paid or secured.

(c) For the purpose of this section, "public utility" shall include any electric membership corporation operating within this State.

*Id.* Until 1991, it was uncontroverted that this statute was the basis under which the Commission heard all transmission line siting disputes. *In re State ex rel. Util. Comm. v. Mountain Elec. Cooperative,* 108 N.C. App. 283, 287, 423 S.E.2d 516, 518 (1992).

In 1991, the General Assembly passed Article 5A which, on its face, appears to deal exclusively with the siting of high voltage transmission lines, specifically lines that have a capacity of at least 161 kilovolts. N.C. Gen. Stat. §§ 62-100—62-107 (2007). N.C. Gen. Stat. § 62-106 explicitly states that the Commission has the power to preempt local ordinances to allow for the siting of transmission lines with a capacity of at least 161 kV. The proposed line in this case is only 115 kV, and the Town argues that the more general provision of N.C. Gen. Stat. § 62-42 can no longer serve as a basis to hear any transmission line siting disputes because N.C. Gen. Stat. § 62-106 has divested the Commission of jurisdiction by negative inference. Although this is an issue of first impression, this Court has stated that:

North Carolina public utilities law makes explicit provision for the Commission to resolve some disputes over the siting by public utilities . . . of electrical transmission lines. *See* N.C.G.S. §§ 62-100—62-107 (Supp. 1991). A statutory resolution process exists only for disputes involving lines designed to carry 161 kilovolts or more. *See* N.C.G.S. § 62-101(c)(1) (Supp. 1991). Where one statute deals with a particular situation in detail but another "deals with it in general and comprehensive terms, the particular statute will be construed as controlling absent a clear legislative intent to the contrary." *Merritt v. Edwards Ridge,* 323 N.C. 330, 337, 372 S.E.2d 559, 563 (1988) . . . . We are not convinced that a conflict necessarily exists between the more general statutory framework construed hereinabove to permit the Commission to hear disputes about electrical line siting and the more recent statutes which govern in detail the resolution of such disputes about lines carrying 161 or more kilovolts.

*Mountain Elec. Cooperative,* 108 N.C. App. at 287, 423 S.E.2d at 518.

STATE ex rel. UTILS. COMM'N v. TOWN OF KILL DEVIL HILLS

[194 N.C. App. 561 (2009)]

Thus, we must determine whether N.C. Gen. Stat. § 62-106 is in conflict with N.C. Gen. Stat. § 62-42. When determining whether a conflict between statutes exists, "[r]epeals by implication are not favored . . . and *the presumption is always against implied repeal.*" *McLean v. Board of Elections*, 222 N.C. 6, 8, 21 S.E.2d 842, 844 (1942) (emphasis added). Instead, "[r]epeal by implication results only when the statutes are inconsistent, necessarily repugnant, utterly irreconcilable, or wholly and irreconcilably repugnant[.]" *Id.* at 9, 21 S.E.2d 844 (internal citations omitted). When interpreting statutes on the same subject, they "are to be reconciled if this can be done by giving effect to the fair and reasonable intendment of both acts[] or by reasonable construction of the statutes." *Id.* at 8-9, 21 S.E.2d 844 (internal citation omitted). Moreover, the "several provisions [of the public utilities statutes] must be construed together so as to accomplish its primary purpose . . . that the public is entitled to adequate service at reasonable rates[.]" *Utilities Comm. v. Telephone Co.*, 285 N.C. 671, 680, 208 S.E.2d 681, 687 (1974).

The Commission concluded that there was no conflict between the two statutes because they "serve different purposes and can be reconciled." The Commission reasoned that the provisions of N.C. Gen. Stat. §§ 62-100-107 "deal with the siting of certain large transmission lines and are not applicable here. [Instead,] G.S. 62-42 is much broader in scope: it deals with compelling any type of needed improvement to a public utility system." We agree with the Commission's interpretation because, as Dominion points out, the siting of lines of at least 161 kV is often controversial and the legislature's decision to require specialized procedures for the siting of these lines is a logical one.

Moreover, if N.C. Gen. Stat. § 62-106 is interpreted as denying the Commission all power to disregard municipal ordinances for the siting of lines that are less than 161 kV, the Commission would be required to give full effect to any municipal ordinance in all instances, no matter how clearly the ordinance conflicts with the Public Utilities Act and/or hinders the State's efforts to regulate utilities. However, as our Supreme Court has held:

To invest each of the towns served by [the limited number of power companies] with the power to regulate and prescribe the manner in which service may be rendered . . . might well lead to a chaotic condition seriously interfering with the ability of the utility to render equal service to all [residents].

*Power Co. v. Membership Corp.*, 253 N.C. 596, 605, 117 S.E.2d 812, 818 (1961). Additionally, the Public Utilities Act "clearly indicate[s] . . . a legislative delegation of power to the Utilities Commission to say when and under what conditions power companies shall furnish service, and this authority relates to service inside of as well as outside of municipalities." *Id. See also Power Co. v. City of High Point*, 22 N.C. App. 91, 99, 205 S.E.2d 774, 780 (1974) (holding that the power of municipalities must yield to the right of the state to regulate public utilities through the Utilities Commission).

Given the presumption against an implied legislative repeal and our Supreme Court's and this Court's holdings regarding the power of the Commission to regulate the field of utilities, we hold that the Commission had jurisdiction to hear the dispute under N.C. Gen. Stat. § 62-42. Therefore, the Town's arguments to the contrary are rejected.

B.

**[2]** The Town next argues that the Commission did not have jurisdiction to adjudicate this dispute because Dominion failed to exhaust its administrative remedies before filing its complaint with the Commission, therefore rendering the dispute unripe for judicial review. Specifically, the Town asserts that because Dominion did not first seek relief from the ordinances via the Town's Board of Adjustment, the Commission was divested of jurisdiction.[1] We disagree.

"As a general rule, where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979). The purpose of the doctrine is to ensure that "matters of regulation and control are first addressed by commissions or agencies *particularly qualified for the purpose*." *Id.* (emphasis added).

While the siting dispute between Dominion and the Town implicates a local zoning issue, the real issue decided by the Commission was whether the improvements Dominion sought to undertake were

---

1. In support of this argument the Town cites to *Hanson Aggregates Southeast, Inc. v. City of Raleigh*, 165 N.C. App. 705, 601 S.E.2d 331 (2004), an unpublished opinion. The North Carolina Rules of Appellate Procedure clearly state that citation to unpublished opinions are disfavored, but "[i]f a party believes . . . that an unpublished opinion has precedential value . . . the party may cite the unpublished opinion if that party serves a copy thereof on all other parties in the case and on the court[.]" N.C.R. App. P. 30(e)(3). The Town has failed to do this; therefore, we do not consider this case.

STATE ex rel. UTILS. COMM'N v. TOWN OF KILL DEVIL HILLS

[194 N.C. App. 561 (2009)]

necessary and needed to be compelled pursuant to section 62-42, a decision which the Commission is uniquely qualified to address. "[U]nder G.S. 62-32 and G.S. 62-42, the Utilities Commission is given the power and the duty to compel utility companies to render adequate service and to set reasonable rates for such service." *State ex rel. Utilities Com. v. Edmisten*, 294 N.C. 598, 605, 242 S.E.2d 862, 867 (1978) (citation omitted); *see also Utilities Comm. v. Telephone Co.*, 21 N.C. App. 408, 411, 204 S.E.2d 529, 531, *reversed on other grounds*, 285 N.C. 671, 208 S.E.2d 681 (1974).

Here, there was an issue as to whether Dominion would be able to provide adequate services at reasonable rates, especially given the restrictions contained in the Town's ordinances. Although the Town could have granted a variance to allow Dominion to build the proposed new line, the Town has cited no statutory authority or precedent that would require Dominion to seek such a variance where an administrative agency specifically designed to handle such disputes has jurisdiction. Indeed, under our Supreme Court's interpretation of Chapter 62 in *Edmisten* and this Court's interpretation in *Telephone Co.*, we think it is clear that the Commission was the appropriate body to hear this dispute. Therefore, we reject the Town's assignments of error as to this issue.

## II. The Commission's Order

### A.

[3] The Town next argues that the Commission erred in entering the order directing the placement of new transmission lines in Kill Devil Hills in contravention of its municipal ordinances. We disagree.

The Town asserts that because their ordinances are consistent with the public welfare and are within their general police power, the ruling of the Commission must be set aside. The Town is quite correct that passing ordinances is within its police power so long as those ordinances are reasonable. *Massey v. City of Charlotte*, 145 N.C. App. 345, 349, 550 S.E.2d 838, 842 (2001). The issue here, however, is not whether the ordinances were reasonable. Rather, the issue is whether the local ordinances were consistent with state law, particularly when considered in conjunction with the Commission's authority and duty to compel the provision of adequate services at reasonable rates as " '[t]he Commission is . . . vested *with all power necessary* to require and compel any public utility to provide and furnish to the citizens of this State reasonable service of the kind it undertakes to fur-

nish[.]' " *Telephone Co.*, 285 N.C. at 681, 208 S.E.2d at 687 (citation omitted). Here, the Commission compelled Dominion to provide power to the Town, and as we held *supra,* this is within the Commission's power.

## B.

[4] Next, the Town argues that the Commission applied the burden of proof incorrectly. We disagree.

Here, the Town asserts that

> the Commission only required Dominion [to] show that its proposed "additions, extensions, repairs, or improvements ought reasonably to be made," and that "it is reasonable and proper that new structures should be erected to promote the security or convenience or safety of [the utility's] patrons, employees, and the public," and to "serve the public convenience and necessity."

(Alteration in original.)

The passages quoted by the Town from the Commission's order, however, are not statements as to the burden of proof but instead are paraphrases or quotations from N.C. Gen. Stat. § 62-42, the statute on which the proceeding was based. The issue was whether the ordinances, as applied to Dominion's proposed transmission line, were invalid given the Commission's authority and duty to compel Dominion to complete certain improvements in accordance with the purposes of the Public Utilities Act. Here, the Commission appropriately placed the burden of proof as to this issue on Dominion. Moreover, as the Commission correctly noted, once the Commission became aware of hazardous conditions affecting a public utility or its service to the public, the Commission was obligated to remedy the situation. *See State ex rel. Utilities Comm. v. Seaboard Coast Line Railroad*, 62 N.C. App. 631, 639, 303 S.E.2d 549, 554 (1983). The Town's arguments to the contrary are therefore rejected.

## C.

[5] The Town also contends that the Commission improperly applied or failed to apply the factors applicable to transmission line siting disputes. We disagree.

In reviewing an order of the Utilities Commission, this Court " 'look[s] to the findings of fact and conclusions of the Commission and determine[s] whether the Commission has considered the factors

required by law and whether its findings are supported by competent, substantial and material evidence in view of the whole record.' " *State ex rel. Utils. Comm'n v. Wardlaw*, 179 N.C. App. 582, 586-87, 634 S.E.2d 898, 900 (2006) (quoting *Utilities Comm. v. Springdale Estates Assoc.*, 46 N.C. App. 488, 490-91, 265 S.E.2d 647, 649-50 (1980)). " 'When applying the whole record test, the [reviewing] court may not replace the Commission's judgment with its own when there are two reasonably conflicting views of the evidence.' " *Id.* at 587, 634 S.E.2d at 900 (citation omitted). Instead, " '[t]he weighing of the evidence and the drawing of the ultimate conclusion therefrom . . . is for the Commission, not the reviewing court.' " *State ex rel. Utilities Comm. v. Public Staff*, 323 N.C. 481, 491, 374 S.E.2d 361, 367 (1988) (citation omitted).

The Town argues that *Dixon v. Duke Power*, 94 N.C.U.C. 307 (2004), is controlling and that the six factors used in that case must be applied here. At the outset, we note that *Dixon* is a Utilities Commission order and is not precedent in this Court. In any event, in *Dixon* the Commission did not establish mandatory factors; rather, it simply addressed the six arguments that the complainants raised in that proceeding. Furthermore, we have found no authority supporting such a proposition or any list of mandatory factors that must be considered. Accordingly, the Town's arguments to the contrary are rejected.

## D.

[6] The Town also asserts that the Commission erred in determining that the line should be placed along the east side (ocean side) of the Town. We disagree.

In support of this conclusion of law, the Commission made findings of fact that there was "not enough room in the right-of-way of the existing [l]ine . . . and the proposed new line." In other words, simply adding another line along the west side (sound side) of the Town was not a viable option. Moreover, even if an additional right-of-way were obtained, "[i]nstalling new structures to hold a double-circuit line along the sound-side corridor would involve either lengthy outages or unacceptable safety risks." In sum, the Commission found as fact that "[l]ocating both the existing line and the proposed new line along the sound-side corridor is not reasonable, practical, or feasible."

As to burying the line, the Commission found that this option "would be excessively and unreasonably costly, would require

[the acquisition of an] additional right-of-way, [and] would raise greater reliability and construction impact concerns than the over-head line[.]" As discussed *supra*, the cost of any proposed utilities project is particularly important as the Commission is charged with maintaining reasonable rates for the public. Further, even if this option were pursued, the Commission found that it "might not be completed before [the] existing [l]ine . . . reaches its maximum load capacity."

As to the other options presented by the Town, rebuilding the existing line to 230 kV or constructing a new line reaching from Riders Creek across the Alligator River and the Croatan and Roanoke Sounds, into Whalebone and north to the Nags Head Substation, the Commission found that these two options were not reasonable, practical, or feasible.

We find competent, substantial and material evidence to support these findings of fact and therefore, these findings are binding on this Court. Specifically, the Commission heard evidence from Steve Bollinger, a Dominion witness, that the new line proposed by Dominion is necessary to accommodate growing customer demand on the Outer Banks and that it will relieve the projected overload on the existing line. Mr. Bollinger also testified that if a new circuit were added to the existing line, the existing line would have to be taken out of service, which would result in a major power outage affecting most of the Outer Banks. Furthermore, while it is possible to transfer the existing line to a temporary structure without cutting off service, this approach would be extremely hazardous to the public safety. There was also evidence presented that because the existing line is located on a narrow corridor, an additional right-of-way would have to be obtained in order to add a new circuit, which would result in increased costs.

With regard to burying the line, the Commission heard testimony from Dominion's witness, Donald E. Koonce, that underground lines have a detrimental effect on the reliability of service, primarily because of the time required to repair damages. Mr. Koonce stated that when an underground line fails, the process of determining the exact location of the failed cable and bringing in specialized contractors to make the necessary repairs is too time consuming to be practical. Outages in underground lines typically last for a week or longer, whereas overhead line outages can usually be repaired within hours. Furthermore, construction operating, and maintenance costs of underground lines are six to seven times higher than overhead lines.

STATE ex rel. UTILS. COMM'N v. TOWN OF KILL DEVIL HILLS

[194 N.C. App. 561 (2009)]

Finally, in addition to having no right-of-way for the construction of underground lines, their construction is far more disruptive than overhead lines.

We also find substantial, competent, and material evidence supporting the Commission's conclusion that the Town's proposed alternate route was not reasonable, practical, or feasible. Specifically, the Commission heard testimony that Dominion would have to obtain a right-of-way over a thirty-six mile corridor, which would be much longer and much more expensive than Dominion's proposed line for which it already had a right-of-way. Moreover, this proposal would require Dominion to run a line across the Alligator River, Croatan Sound, Roanoke Sound, and the Alligator River National Wildlife Refuge, which would raise many complex environmental issues. Finally, the Commission heard testimony that pursuing the Town's proposed alternative would require costly upgrades to Dominion's existing transmission facilities located to the north and west of Riders Creek.

In sum, given the substantial, competent, and material evidence presented on these and all other issues presented to the Commission, which support its finding of facts and which in turn support its conclusions of law, we can find no error in the Commission's order. The Town's arguments to the contrary are therefore rejected, and the decision of the Commission is affirmed.

Affirmed.

Judge STEPHENS concurs.

Judge JACKSON dissents in a separate opinion.

JACKSON, Judge dissenting.

I respectfully dissent from the majority's holding that the Commission had jurisdiction both to review Dominion's premature appeal and to preempt the Town's ordinance.

Preliminarily, because Dominion has failed to apply for a conditional use permit or variance, I would dismiss the matter for Dominion's failure to exhaust its administrative remedies. "If a plaintiff has failed to exhaust its administrative remedies, the court lacks subject matter jurisdiction and the action must be dismissed." *Justice for Animals, Inc. v. Robeson Cty.*, 164 N.C. App. 366, 369, 595 S.E.2d

773, 775 (2004) (citing *Shell Island Homeowners Ass'n v. Tomlinson,* 134 N.C. App. 217, 220, 517 S.E.2d 406, 410 (1999)).

Here, Dominion failed to seek a conditional use permit from the Town's Planning Board and Board of Commissioners, failed to seek a variance from the Town's Board of Adjustment, and, assuming adverse rulings from the local boards, failed to seek relief from the superior court. *See Laurel Valley Watch, Inc. v. Mountain Enters. of Wolf Ridge, LLC,* 192 N.C. App. 391, 399, 665 S.E.2d 561, 569-70 (2008) (holding this Court is without subject matter jurisdiction to hear plaintiff's claims because plaintiff failed exhaust administrative remedies by failing to seek and to receive an adverse ruling from county zoning officials or to appeal the adverse ruling to the county Planning Board before prematurely seeking relief in the trial court); *Ward v. New Hanover Cty.,* 175 N.C. App. 671, 679, 625 S.E.2d 598, 603 (2006) (summary judgment affirmed for defendant county when plaintiff failed to exhaust administrative remedies without having sought special use permits from the Board of Adjustment). Instead, Dominion attempted to circumvent the municipal ordinance and appropriate administrative process through the Commission. It long has been established that "plaintiffs are not permitted to change horses in the middle of the stream . . . ." *Pue v. Hood, Comr. of Banks,* 222 N.C. 310, 313, 22 S.E.2d 896, 898 (1942) (citations omitted) (internal quotation marks omitted).

Next, I read North Carolina General Statutes, section 62-106 as creating in the Commission a limited power to preempt municipal ordinances only when the siting of electrical transmission lines carrying 161 kilovolts or more is at issue. Although I agree that the Commission has jurisdiction to adjudicate disputes involving less than 161 kilovolts pursuant to North Carolina General Statutes, section 62-42, I cannot believe that the General Assembly intended section 62-42 to give the Commission an implicit power to preempt a valid municipal ordinance when the siting of an electrical transmission line carrying less than 161 kilovolts is at issue. Because the Commission was not vested properly with jurisdiction over Dominion's premature appeal, pursuant to North Carolina General Statutes, section 62-94(b)(2), I would hold the Commission's order null and void as *ultra vires. See* N.C. Gen. Stat. § 62-94(b)(2) (2007).

North Carolina General Statutes, section 160A-174 enables cities and towns to enact ordinances to provide for "the health, safety, or welfare of its citizens and the peace and dignity of the [town] . . . ." N.C. Gen. Stat. § 160A-174(a) (2007). Furthermore,

STATE ex rel. UTILS. COMM'N v. TOWN OF KILL DEVIL HILLS

[194 N.C. App. 561 (2009)]

[a] [town] ordinance shall be consistent with the Constitution and laws of North Carolina and of the United States. An ordinance is not consistent with State or federal law when . . . [t]he ordinance purports to regulate a field for which a State or federal statute *clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation*[.]

N.C. Gen. Stat. § 160A-174(b)(5) (2007) (emphasis added).

In pertinent part, North Carolina General Statutes, section 62-42 provides:

(a) . . . whenever the Commission . . . finds:

. . . .

(4) That it is reasonable and proper that new structures should be erected to promote the . . . convenience . . . of its patrons, employees and the public, or

(5) That any other act is necessary to secure reasonably adequate service or facilities and reasonably and adequately to serve the public convenience and necessity,

the Commission shall enter and serve an order directing that such additions, . . . improvements, or additional services or changes shall be made or affected within a reasonable time prescribed in the order.

. . . .

(c) For the purpose of this section, "public utility" shall include any electric membership corporation operating within this State.

N.C. Gen. Stat. § 62-42 (2007). Thus, section 62-42 grants the authority to the Commission both to make findings and to draft orders implementing the results of those findings.

This Court has held that the Commission has jurisdiction to hear complaints against the proposed siting of electrical transmission lines pursuant to section 62-42. *See In re State ex rel. Util. Comm. v. Mountain Elec. Cooperative*, 108 N.C. App. 283, 423 S.E.2d 516 (1992), *aff'd*, 334 N.C. 681, 435 S.E.2d 71 (1993) (per curiam).

In *Mountain Electric*, the "sole issue presented . . . [was] whether the . . . Commission . . . lacked jurisdiction over a dispute arising from

the proposed siting of an electrical transmission line." *Mountain Elec. Cooperative*, 108 N.C. App. at 283, 423 S.E.2d at 516. The facts of *Mountain Electric*, however, did not raise the issue of whether the Commission has jurisdiction to preempt a local ordinance during a dispute involving the siting of an electrical transmission line carrying less than 161 kilovolts. In fact, this Court specifically limited its holding by explaining that

> [w]e are not convinced that a conflict necessarily exists between the more general statutory framework construed hereinabove to permit the Commission to hear disputes about electrical line siting and the more recent statutes which govern in detail resolution of such disputes about lines carrying 161 or more kilovolts. *Nevertheless, we leave for another day the question of whether the statutes permit the Commission after the effective date of [North Carolina General Statutes, sections] 62-100 et seq. to continue to resolve, in the same manner as before, disputes involving lines carrying less than 161 kilovolts.*

*Mountain Elec. Cooperative*, 108 N.C. App. at 287, 423 S.E.2d at 518 (emphasis added).

Sections 62-100 *et seq.* form article 5A of Chapter 62 of the General Statutes, which became effective 1 December 1991. In relevant part, section 62-100(7) defines "transmission line" as "an electric line designed with a capacity of at least 161 kilovolts." N.C. Gen. Stat. § 62-100(7) (2007). Thus, article 5A expressly concerns higher voltage lines. "No public utility or any other person may begin to construct a new transmission line [of 161 kilovolts or more] without first obtaining from the Commission a certificate of environmental compatibility and public convenience and necessity." N.C. Gen. Stat. § 62-101(a) (2007). However, "[a] certificate is not required for construction of . . . [a] line designed to carry less than 161 kilovolts[.]" N.C. Gen. Stat. § 62-101(c)(1) (2007). Therefore, the more general provision of section 62-42 continues to govern electric transmission lines carrying less than 161 kilovolts.

In contrast to the broad grant of authority in section 62-42, section 62-106 provides express authority to the Commission to preempt local ordinances and sets forth the necessary procedures. Specifically, section 62-106 provides that

> [w]ithin 30 days after receipt of notice of an application as provided by [North Carolina General Statutes, section] 62-102, a

municipality or county shall file with the Commission and serve on the applicant the provisions of an ordinance that may affect the construction, operation, or maintenance of the proposed transmission line in the manner provided by the rules of the Commission. If the municipality or county does not serve notice as provided above of any such ordinance provisions, the provisions of such ordinance may not be enforced by the municipality or county. If the applicant proposes not to comply with any part of the ordinance, the applicant may move the Commission for an order preempting that part of the ordinance. Service of the motion on the municipality or county by the applicant shall make the municipality or county a party to the proceeding. If the Commission finds that the greater public interest requires it, the Commission may include in a certificate issued under this Article an order preempting any part of such county or municipal ordinance with respect to the construction, operation or maintenance of the proposed transmission line.

N.C. Gen. Stat. § 62-106 (2007).

Thus, in North Carolina General Statutes, section 62-106, the General Assembly has provided detailed procedures for the permissible preemption of local ordinances only when transmission lines carrying 161 kilovolts or more are at issue. Notwithstanding its broad scope, section 62-42 does not contain such an express grant of a power to preempt. Indeed, section 62-42 contains no synonym for, or derivative of "preempt." *See* N.C. Gen. Stat. § 62-42 (2007).

Although the majority argues that section 62-106 does not implicitly repeal or otherwise abrogate section 62-42, I believe "[t]his amendment to Chapter 62 reflects an acknowledgement [sic] by the legislature that it was creating a right in the Commission that did not previously exist." *Mountain Elec. Cooperative*, 108 N.C. App. at 288, 423 S.E.2d at 518 (Greene, J., dissenting) (citing *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968) ("The presumption is that the legislature intended to change the original act by creating a new right or withdrawing any existing one.") (citation and internal quotation marks omitted)). Because the only "statute [that] clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation" is North Carolina General Statutes, section 62-106, I cannot join the majority's view that section 62-42 enables the Commission to preempt the Town's ordinance. N.C. Gen. Stat. § 160A-174(b)(5) (2007). The legislative bal-

ance of the scope of permissible action by the Commission with the authority of the Town allows the Commission to displace local ordinances only when siting electrical transmission lines carrying 161 kilovolts or more.

Therefore, in view of our limited holding in *Mountain Electric* as well as the General Assembly's demonstrated ability to provide a limited power of preemption to the Commission in article 5A of Chapter 62 of the General Statutes—a power not expressed in the Commission's purported jurisdictional base, section 62-42—I would hold that the Commission did not have jurisdiction to preempt the Town's valid municipal ordinance. " 'The Utilities Commission, being an administrative agency created by statute, has no regulatory authority except such as is conferred upon it by Ch[apter] 62 of the General Statutes.' " *Mountain Elec. Cooperative*, 108 N.C. App. at 284, 423 S.E.2d at 516-17 (brackets in original) (quoting *Utilities Comm. v. Merchandising Corp.*, 288 N.C. 715, 722, 220 S.E.2d 304, 308 (1975)).

For the foregoing reasons, I respectfully dissent.